LEO HENTGES AND ANOTHER v. RAYMOND A. WOLFF, ALSO KNOWN AS RAY WOLFF.[1]

December 24, 1953.

No. 36,158.

*Ostensoe & Ostensoe,* for appellant.
*Severson & Qualley,* for respondents.

DELL, CHIEF JUSTICE.

Defendant appeals from a judgment awarding plaintiffs $375 and costs which amount was found to be due them as a commission under a broker's contract involving the sale of a cafe at Canby, Minnesota.

The facts were stipulated and are not in dispute. By agreement of the parties the action came on for disposition in the lower court by motion for summary judgment under Rule 56 of the Rules of

---

[1]Reported in 61 N. W. (2d) 748.

Civil Procedure. Plaintiff Leo Hentges and Emmert Reckoff, deceased, were copartners engaged in the business of selling real estate and personal property as brokers for their listed customers. The defendant, desiring to sell his cafe equipment, lease rights, and supplies, on January 2, 1952, entered into an agreement with the partnership designated "Uniform Exclusive Sale Contract." The agreement required the partnership to list the property for sale in its office and to use its efforts to find a purchaser for the property. It granted the partnership the exclusive right to sell or contract to sell the property for $8,500 plus inventory until March 1, 1952, and thereafter until ten days' written notice terminating the agreement was received. For its services the partnership was to receive a commission of five percent of the purchase price upon any sale or contract for sale of the property made while the agreement remained in force, whether such sale was made by it or the defendant and whether at the price stipulated in the contract or at a different price acceptable to the defendant. The contract contained the following provision upon which plaintiffs predicate their right to recover:

"It is further agreed that upon any sale or contract for the sale of said real estate made by me within three months next after the termination of this agreement to any person with whom you have had negotiations for the sale of the same and of which I shall have been advised, I will pay you the full rate of commission, as above indicated."

Immediately upon execution of the contract the partnership advertised the property for sale and continually thereafter made every effort to obtain a purchaser for it in accordance with the terms of the contract. It negotiated with prospective purchasers and showed them the property. On or about May 1, 1952, it negotiated for a sale of the property with Edwin Dougherty, the ultimate purchaser, and the defendant was advised of that fact. These negotiations with Dougherty did not result in a sale of the property at that time, and the negotiations were discontinued. On June 11, 1952, Reckoff died. Up to the time of his death the contract was in full force and effect since the defendant had not terminated it by written notice as au-

thorized by the contract. On June 23, 1952, the defendant sold the property to Dougherty for $7,500 which was $1,000 less than the price called for in the contract.

This action was instituted by Leo Hentges and William Reckoff, as administrator of the estate of Emmert Reckoff, deceased, to recover a commission on the sale to Dougherty under the provision of the contract above set forth. As the contract was in force until the death of Reckoff on June 11, plaintiffs contend that the sale was made within the three months' period stated in the contract and that, since the contract does not distinguish between the different methods by which it might be terminated, it is immaterial whether its termination came about by expiration of time limits under the contract or by death of one of the partners.

Defendant contends that the contract was wholly executory and that the death of Reckoff dissolved the partnership, thus extinguishing all rights under the contract. The only authority cited by him is Egner v. States Realty Co. 223 Minn. 305, 26 N. W. (2d) 464, 170 A. L. R. 500, which he claims is controlling here. That case involved an agency contract between a partnership and the States Realty Company for the sale of cemetery lots. One of the partners withdrew from the partnership, thus dissolving that relationship. The company elected to treat the contract as terminated and so advised the members of the partnership, and the remaining member of the partnership brought the action to enjoin the company from terminating the agency contract. The purpose of the action was to keep the contract in force so that he might continue to perform under it and earn commissions on sales of cemetery lots made after the withdrawal of his partner and the dissolution of the partnership. The court found for the company. In the case now before us the performance rendered by the partnership was prior to the dissolution, and recovery of the commission here is sought for that performance; while in the Egner case the remaining partner was endeavoring to keep the contract in force so as to perform after the dissolution. The question presented here is entirely different from that

520

presented in the Egner case, and that case is in no way applicable here.

By its clear terms the contract here was intended to serve one main purpose; namely, to bring about a sale of the property. The partnership could fulfill its obligations under the contract and earn its commission in two ways. (1) It could sell or contract to sell the property. (2) It could negotiate with persons for the sale of the property and inform the owner of the negotiations, thus making available prospective purchasers. However, in this latter instance the commission earned would be contingent upon the owner selling the property within three months next after the termination of the contract to one of these prospective purchasers. This latter alternative serves a dual purpose. Where a broker under a contract such as we have here claims a commission on a sale made by the owner after the termination of the contract on the grounds that he was the moving cause of such sale, he can only make such claim where the sale was made within the time specified in the contract. On the other hand under such a contract a definite period of time is fixed during which the owner of property cannot take the fruits of the broker's labor without compensation. The stipulated facts disclose that the partnership advertised the property and made every effort to find a purchaser. It entered into negotiations with the ultimate purchaser, and, although these negotiations were discontinued, defendant does not claim that the negotiations failed to come within the intended meaning of that term as it appears in the contract. It is therefore apparent that under the second alternative the partnership rendered full performance, and at the time of the death of Reckoff the contract was not wholly executory.

The death of Reckoff dissolved the partnership,[2] but this did not end the partnership for all purposes. M. S. A. 323.29 of the uniform partnership act provides:

"On dissolution the partnership is not terminated, but continues until the winding up of partnership affairs is completed."

[2]M. S. A. 323.30 (4) provides: "Dissolution is caused: * * * (4) By the death of any partner;"

In Cotten v. Perishable Air Conditioners, 18 Cal. (2d) 575, 577, 116 P. (2d) 603, 604, 136 A. L. R. 1068, the court, speaking of dissolution, stated:

"In general a dissolution operates only with respect to future transactions; as to everything past the partnership continues until all pre-existing matters are terminated."

Similarly, in McKinley v. Long, 227 Ind. 639, 644, 88 N. E. (2d) 382, 384, 23 A. L. R. (2d) 577, the court quotes, with approval, from 47 C. J., Partnership, § 791:

"The view is generally taken that after dissolution the partnership continues in a limited sense in respect to past transactions and existing assets. This includes the winding up or liquidation of partnership affairs, which in turn includes in general the performance of existing contracts, the collection of debts or claims due the firm, and the payment of firm debts."

Here, the partnership had no further duties to perform under the clause of the contract under consideration to become entitled to a commission.

Although the partnership's claim was contingent at the time of Reckoff's death, his death did not prevent the claim from becoming absolute when defendant sold the property. The act of the defendant, in selling the property to Dougherty, converted the contingent claim into an absolute one. No act of the partnership was necessary after the contract was terminated in order to fix liability on the defendant. It was the act of the defendant himself, in selling the property to Dougherty, that fixed his liability. It was, therefore, the right and duty of the surviving partner to wind up the affairs of the partnership,[3] which included collecting the commission earned under the terms of the contract.

Affirmed.

[3]McClennen v. Commr. of Internal Revenue (1 Cir.) 131 F. (2d) 165, 144 A. L. R. 1127.