D'Amato, Respondent, v. Freeman Printing Company and others, Appellants.

*February 29—April 9, 1968.*

For the appellants there was a brief by *Lowry, Hunter & Tikalsky,* and oral argument by *Richard N. Hunter* and *Thomas E. Anderson,* all of Waukesha.

For the respondent there was a brief and oral argument by *Roland J. Steinle, Jr.,* attorney, and *Gregory Gramling, Jr.,* of counsel, both of Milwaukee.

ROBERT W. HANSEN, J. In his memorandum decision, the trial court found that the alleged libelous comment ". . . relates to several newspaper items . . ." and is ". . . not therefore limited to a single publication but extends over a number of different publications and a period of several weeks in time." Of the demurrer by defendants he found "Defendants have demurred to the amended complaint, which alleges 17 separate causes of action for libel by newspaper, claiming that said amended complaint fails to state facts sufficient to constitute a cause of action." He overruled the demurrer, stating ". . . it is the opinion of the court that the pleadings do state one or more causes of action and that the demurrer should be overruled."

The first question before us is whether the trial court exceeded its authority in treating the demurrer as made

to an amended complaint, presenting one or more causes of action. An affirmative answer would require reversal and remanding to the trial court with directions to rule on each of 17 demurrers challenging each of 17 causes of action, each related to an article or part of an article from the series of campaign time articles complained of.

For the purpose of ruling on the demurrer, the trial court treated the amended complaint as a unit. It did not rule individually on 17 causes of action. It concluded only that there were one or more causes of action beyond the reach of demurrer. The trial court may have been propelled toward the unitary approach by the fact that each cause contains in substance the following allegation ". . . that the said statement and the article in its entirety, were part and parcel of a continuing course of defamatory attack on the reputation of the plaintiff, which attack was extended over a period of time."

In a somewhat different context, this court has defined a cause of action as ". . . a grouping of facts falling into a single unit or occurrence as a lay person would view them." [1] In a more analogous situation, this court has said "The complaint may be regarded as though the pleader had in form at least attempted to state but one cause of action. . . . We are not bound by the form of a pleading, but may consider the substance of the allegations thereof for the purpose of determining whether more than one cause of action is alleged therein." [2] On demurrer the trial court considered the substance of the allegations for the purpose of determining whether one or more than one cause of action is alleged therein, and we hold that it had the discretionary right so to do. In

---

[1] *Caygill v. Ipsen* (1965), 27 Wis. 2d 578, 135 N. W. 2d 284, quoting Clark, *Code Pleadings* (2d ed.), p. 130.

[2] *Usow v. Usow* (1933), 213 Wis. 395, 401, 251 N. W. 458.

appellant's brief, the 17 causes are referred to as "Count I," "Count II," "Count III," etc. That is how the trial court treated them in the hearing on demurrer. We will review the trial court's order on the basis on which it is made.

In his decision, the trial court stated "In ruling on the demurrer the court is obliged to assume that all factual statements published by defendants and pleaded by plaintiff were falsely and maliciously made. The plaintiff . . . alleges that the objectionable statements were untrue or false. Malice must also be presumed by the court . . . ." On demurrer, pleadings must be construed liberally. This court must, as the trial court did, give the complaint a liberal construction in favor of stating a cause of action, with every reasonable intendment and presumption to be made in favor of the complaint and with the plaintiff to be entitled to all reasonable inferences which can be drawn from the facts pleaded.[3] Demurrer concedes the truth of all material allegations of fact, challenges only the conclusions of law. The trial court found that, "The amended complaint further alleges . . . that the defendants maliciously and with intent to defame and injure plaintiff in his reputation published various false and defamatory statements, duly enumerated, which they refused to correct." [4] We

_____

[3] *Libowitz v. Lake Nursing Home, Inc.* (1967), 35 Wis. 2d 74, 79, 80, 150 N. W. 2d 439.

[4] In this regard, the complaint alleges as to each cause or count, ". . . the defendants . . . wrongfully, maliciously and with intent to defame and injure the plaintiff in his reputation, caused to be published in the aforesaid Waukesha Freeman, the following untrue, defamatory and libelous statement:" and "That the said defendants knew or ought to have known that the said statement was false, and that they made and published the same with such knowledge; that the defendants either did not believe in the truth of said defamatory statement, or, if they did, had no reasonable grounds for so believing; that the same was published

concur, finding that both malice and untruthfulness are sufficiently alleged.

Compelled on demurrer to assume that the defendants made the statements falsely and maliciously, the trial court had then to rule on whether the articles published by defendants about plaintiff could be found to convey a defamatory meaning. If so, the demurrer had to be overruled. The trial court so found, stating "Without attempting to enumerate all statements or circumstances alleged in the amended complaint sufficient to convey a defamatory meaning, it is the opinion of the court that the pleadings do state one or more causes of action and that the demurrer should be overruled."

The trial court further stated "For instance, on demurrer the court must assume that defendants falsely and maliciously stated that plaintiff sent out letters to fellow attorneys asking for financial aid to underwrite his expenses of the campaign in probable violation of the corrupt practices law; that defendants falsely and maliciously stated plaintiff pretended on some of his campaign posters that he was already a judge; that defendants falsely and maliciously stated by innuendo that plaintiff wrongfully neglected to perform his duties as district attorney so that prostitution, gambling and liquor laws were openly and notoriously being violated and that plaintiff did nothing to perform his duties until the defendants' newspaper demanded an investigation." We concur that statements such as these, presumed on this demurrer to be false and malicious, are clearly capable of defamatory meaning.

---

with reckless disregard of the truth; that the said statement and article in its entirety, were part and parcel of a continuing course of defamatory attack on the reputation of the plaintiff, which attack was extended over a period of time."

This court has cited with approval the Restatement definition of "defamatory" [5] which reads "A communication is defamatory if it tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." [6] We agree with the trial court that the statements and circumstances alleged in the amended complaint are capable of being given a defamatory meaning that would lower plaintiff in the estimation of the community and deter third persons from associating or dealing with him in his profession as a practicing attorney. The possible implication of the seventh through tenth counts that the plaintiff was extremely lax, if not corrupt, in performing his duties as district attorney so that prostitution, gambling and liquor laws were openly being violated, if falsely and maliciously made as on demurrer must be assumed, are capable of harming plaintiff's reputation and deterring others from dealing with him. On demurrer, with falsity and malice alike to be assumed, we sustain the trial court finding that the allegations of the amended complaint are not as a matter of law nondefamatory.

There remains the question as to whether the fact that the statements complained of were made about a public figure seeking public office in a judicial campaign places them beyond the reach of a suit for libel. Counsel for appellant newspaper argues that it should, urging this

---

[5] *Lathan v. Journal Co.* (1966), 30 Wis. 2d 146, 140 N. W. 2d 417.

[6] Restatement, 3 *Torts*, p. 140, sec. 559. *See also Frinzi v. Hanson* (1966), 30 Wis. 2d 271, 276, 140 N. W. 2d 259, stating: "In determining whether language is defamatory, the words must be reasonably interpreted and must be construed in the plain and popular sense in which they would naturally be understood in the context in which they were used and under the circumstances they were uttered."

court to adopt the concept of absolute press privilege.[7] Proponents of this concept would grant to the press an absolute immunity for criticism of public officials in performance of their public duties. The sharp cut of this contention is not limited to public officials or press critics. As appellants' counsel state in their brief, "The existence of a field of libel must necessarily be subtracted from the field of free debate. . . . It follows, therefore, that any system of law which permits actions for libel automatically restricts or abridges freedom of press and speech and such abridgment is constitutionally prohibited." Left far behind would be Justice HOLMES' proscription against shouting "Fire" in a crowded theater. Equally abandoned would be the individual citizen's right to protection of his character and reputation against false, malicious and defamatory attack. Such freedom without any regard or respect for the rights of others would not be a shield for freedom of speech or of the press. It would more likely be a sword in the hands of malice-motivated maligners that could endanger both.

Appellants' brief concedes that the United States Supreme Court has "stopped short" of granting absolute press immunity even as to criticism of public officials in their official conduct. It is clear that they have. The majority position of the United States Supreme Court

---

[7] See concurring opinions of Justices DOUGLAS, GOLDBERG and BLACK in *New York Times Co. v. Sullivan* (1964), 376 U. S. 254, 293–305, 84 Sup. Ct. 710, 11 L. Ed. 2d 686; *see also* concurring opinions of Justices DOUGLAS, GOLDBERG and BLACK in *Garrison v. Louisiana* (1964), 379 U. S. 64, 80–88, 85 Sup. Ct. 209, 13 L. Ed. 2d 125. *See also* concurring and dissenting opinion of Justices DOUGLAS and BLACK in *Rosenblatt v. Baer* (1966), 383 U. S. 75, 94–96, 86 Sup. Ct. 669, 15 L. Ed. 2d 597; and the concurring and dissenting opinion of Justices DOUGLAS and BLACK in *Curtis Publishing Co. v. Butts* (1967), 388 U. S. 130, 170–172, 87 Sup. Ct. 1975, 18 L. Ed. 2d 1094.

as to malicious defamatory statements concerning public officials is clearly stated in *Garrison v. Louisiana:* [8]

"The use of calculated falsehood, however, would put a different cast on the constitutional question. Although honest utterance, even if inaccurate, may further the fruitful exercise of the right of free speech, it does not follow that the lie, knowingly and deliberately published about a public official, should enjoy a like immunity. At the time the First Amendment was adopted, as today, there were those unscrupulous enough and skillful enough to use the deliberate or reckless falsehood as an effective political tool to unseat the public servant or even topple an administration. Cf. Riesman, Democracy and Defamation: Fair Game and Fair Comment I, 42 Col. L. Rev. 1085, 1088–1111 (1942). That speech is used as a tool for political ends does not automatically bring it under the protective mantle of the Constitution. For the use of the known lie as a tool is at once at odds with the premises of democratic government and with the orderly manner in which economic, social or political change is to be effected . . . Hence the knowingly false statement and the false statement made with reckless disregard of the truth, do not enjoy constitutional protection." [9]

We repeat, that on demurrer, at this stage of the proceedings in this case, both malice and falsity must be presumed to exist. This fact makes inapplicable the recent United States Supreme Court decisions, either as to "public officials" [10] or as to "public figures," [11] persons not public officials but commanding a substantial amount of independent public interest. Conditional press immunity under these decisions requires the absence of

[8] Majority opinion in *Garrison v. Louisiana* (1964), *supra.*

[9] *Id.* at 379 U. S. 75.

[10] See *New York Times Co. v. Sullivan, supra. See also Rosenblatt v. Baer, supra.*

[11] *Curtis Publishing Co. v. Butts, supra.*

a showing of malice. Where malice is established or when it must be presumed, the claim of conditional privilege or defense of fair comment is unavailable. There is no right to maliciously and falsely malign. In a libel case on an appeal from an order overruling a demurrer, this court stated, "Besides, the complaint not only charges that the libelous article is false but that it was published maliciously. Under such circumstances the defense of conditional privilege cannot prevail." [12] The defenses of fair comment and conditional privilege are claims of immunity. These immunities may well be defenses in a libel action. Where malice and falsity and defamation are alleged, they are not barriers to the action being brought.

The road that leads to successful culmination of a libel suit against a daily newspaper has many hazards and hurdles. Particularly for a candidate for or holder of public office, the road has become rockier. However, in this case at this stage of the proceedings, the plaintiff is not to be blocked by demurrer from embarking on the journey.

*By the Court.*—Order affirmed.

---

[12] *Stevens v. Morse* (1925), 185 Wis. 500, 201 N. W. 815.