INTERSTATE FIRE & CASUALTY COMPANY and others, Respondents, v. CITY OF MILWAUKEE, Appellant.

*No. 4. Argued November 24, 1969.—Decided January 9, 1970.*
(Also reported in 173 N. W. 2d 187.)

For the appellant there were briefs by *John J. Fleming,* city attorney, and *Thomas E. Hayes* and *Wallace E. Zdun,* assistant city attorneys, and oral argument by *Mr. Hayes.*

For the respondents there was a brief by *Kenneth M. Kenney* and *Wolfe, O'Leary, Kenney & Wolfe,* all of Milwaukee, and oral argument by *Kenneth M. Kenney.*

HANLEY, J. The principal issue raised on this appeal can be stated as follows: Does sec. 66.091, Stats., place the city within the position of a tort-feasor, thereby requiring the respondents upon payment to their insureds to be subrogated to their insureds' rights against the city?

By demurring to the respondents' complaint, the city of Milwaukee (hereinafter the "appellant") has conceded the truth of all allegations of fact and has challenged only the conclusion of law resulting therefrom. *D'Amato v. Freeman Printing Co.* (1968), 38 Wis. 2d 589, 157 N. W. 2d 686; *Jenkins v. State* (1961), 13 Wis. 2d 503, 108 N. W. 2d 924. Assuming the veracity of the pleaded facts, we must determine whether there exists a rule of law which would allow recovery under the pleaded facts.

It is well established that subrogation is an equitable doctrine which is applicable where one other than a mere volunteer has been required to pay a debt or demand which in equity should have been satisfied by another. *Lee v. Threshermen's Mut. Ins. Co.* (1965), 26 Wis. 2d 361, 132 N. W. 2d 534; *Perkins v. Worzala* (1966), 31 Wis. 2d 634, 143 N. W. 2d 516.

In order to avoid unjust enrichment the doctrine has often been applied on behalf of one who has paid for damages caused by a tort-feasor. *Patitucci v. Gerhardt* (1932), 206 Wis. 358, 240 N. W. 385.

It is the contention of the respondents that by imposing absolute liability, sec. 66.091, Stats., renders the appellant the substantial equivalent of a tort-feasor. If respondents' contention is correct, the doctrine of subrogation is applicable and the demurrer to the complaint must be overruled. If, however, the city is not the equivalent of a tort-feasor, the doctrine is inapplicable. In such case the demurrer must be sustained since there is no alternative rule of law which under the facts pleaded would allow recovery.

As determinative of the statute's effect upon the doctrine of subrogation [1] the respondents cite *Frederick v. Great Northern Ry.* (1932), 207 Wis. 234, 240 N. W. 387, 241 N. W. 363; *Northern Assurance Co. v. Milwau-*

---

[1] Apparently some confusion arose as to whether the trial court based its decision upon an application of the doctrine of subrogation or the doctrine of assignment. The city has thus devoted a considerable portion of its brief distinguishing the two doctrines. As stated in 6 C. J. S., *Assignment*, p. 1051, sec. 2 (12):

". . . Subrogation is the act of the law, depending not upon contract, but upon the principles of equity, while assignment is the act of the parties, and depends generally on intention. . . ."

Although some of this confusion may have resulted from previous use of the term "assignment as a matter of law" in reference to the doctrine of subrogation, such confusion is needless in that the complaint in the instant action is clearly based upon the doctrine of subrogation as opposed to the contractual assignment.

*kee* (1938), 227 Wis. 124, 277 N. W. 149; and *A & B Auto Stores, Inc. v. Newark* (1968), 103 N. J. Super. 559, 248 Atl. 2d 258.

The *Frederick Case, supra,* revolved around a statute under which all that was necessary to create liability on the part of a railroad was proof that property had been injured or destroyed directly or indirectly by fire communicated by a locomotive. Proof of negligence was not required.

This court, relying upon the doctrine of subrogation, held that an insurance company, upon payments to its insured, became an indispensable party to an action by its insured against the railroad. The respondents contend that this holding supports the proposition that upon payment to its insured, an insurer acquires a subrogative right of action against a third party whose legal responsibility exists by virtue of a statute.

The situation in which the appellant here finds itself, however, is somewhat different from that of the railroad. In the *Frederick Case* the statute merely eliminated the requirement of proving the negligence of the railroad; a causal connection between the railroad and the damage still had to be proven. Since the statute required a finding that the railroad "caused" the resulting damage, it was in a sense deemed a wrongdoer, thereby necessitating application of the subrogation doctrine. The instant statute, however, imposes liability without regard to whether a city has caused the riot's commencement or continuation. We believe that liability which is imposed for that which one has not even caused is not imposed on the basis of fault or wrongdoing. On the contrary, it is imposed upon the basis of a public policy aimed at compensating unfortunate citizens.

The principal basis for the respondents' contention that subrogation is applicable to the instant case is found, however, in *Northern Assurance Co. v. Milwaukee, supra,* which was decided by this court in 1938. Since the

facts then before this court were substantially identical to those of the instant case, the respondents contend that the court's decision therein is controlling.

There, as in the instant case, several indemnity insurers, relying upon the state riot statute (then sec. 66.07, Stats.), commenced an action against the city of Milwaukee for damages sustained by their insureds. This court, relying upon *Patitucci v. Gerhardt, supra,* held that, upon payment to their insureds, the insurers became subrogated to the rights of their insureds. In so holding, the court apparently assumed that, for purposes of the doctrine of subrogation, the city was the substantial equivalent of a tort-feasor.

This court's decision in *Northern Assurance* did not expressly define the statute's effect upon the status of the city. However, in a recent decision of the Superior Court of New Jersey, it was specifically held that, for purposes of the subrogation doctrine, the Newark riot statute rendered the city of Newark a tort-feasor.

The facts of the *A & B Auto Stores, supra,* were closely parallel to those of the instant case. There considerable property damage had occurred as a result of widespread rioting in the city of Newark and numerous insurance companies were claiming subrogative rights against the city.

The statute before the New Jersey court was similar to that of Wisconsin and provided:

" 'When, by reason of a mob or riot, any property, real or personal, is destroyed or injured, the municipality if it has a paid police force, in which the mob congregates or riot occurs, or, if not in such a municipality, the county in which such property is or was situate, shall be liable to the person whose property was so destroyed or injured for the damages sustained thereby, recoverable in an action by or in behalf of such person.' " [2]

---

[2] *A & B Auto Stores, Inc. v. Newark, supra,* at page 564.

In refusing to dismiss the subrogation claims of the insurers, the court stated:

"Whether a cause of action exists by common law or statute is of no significance on the right of a subrogee to enforce its claim against the obligor or tort-feasor. . . ." [3]

The court then stated:

"Under the riot statute . . . the city in effect is a wrongdoer. The legislature has designated it as such for failure to enforce the laws and control its inhabitants. Even though its wrongdoing is passive and the damage is directly caused by an active wrongdoer, nevertheless its liability is founded upon a legislative declaration motivated by the municipality's failure to protect property in its confines. . . ." [4]

In regard to *A & B Stores,* it is apparent that the court's decision to render the city the equivalent of a tort-feasor was predicated upon the legislature's intent to make the entire community responsible for damage to the innocent property owners resulting from a breakdown in law enforcement. The philosophy underlying this intent was that by making the entire community responsible for such damages through increased taxes, the community would be stimulated to take steps to prevent such riotous disturbances. This same philosophy of community restitution may well have pervaded this court's 1938 decision in *Northern Assurance* where, without expressly so stating, the city was apparently deemed the equivalent of a tort-feasor.

Clearly, a philosophy which assumes that riots will be repressed or eliminated by requiring the citizenry to absorb the cost of property damages resulting from such riots is no longer sound. In this era of "confrontation

---

[3] *Id.* at page 569.

[4] *Id.* at page 571.

politics," "protest marches" and "civil disobedience" it is naive to think that riot statutes such as that before the court will retard such occurrences or keep them from developing into damaging riots, especially considering the spontaneity with which they occur.

Although this court lacks authority to amend or repeal the instant statute on the basis of its outmoded underlying philosophy, it is not bound to hold the appellant a wrongdoer so as to be subject to the doctrine of subrogation. The appellant does not here attempt to avoid its liability to citizens who seek recovery under this statute. Only the legislature by repealing the statute could make such avoidance possible. The appellant merely asserts that under the existing equities the doctrine of subrogation is unavailable to the respondents.

Clearly, if the respondents were allowed to recover from the city, they would in a sense be recouping their losses from their insureds. This is because any loss by a city must of necessity be passed on to its residents in the form of increased taxes.

The insureds, as residents of the city, would thus pay not only premiums, but also a portion of their own loss. In paying the losses the respondents merely discharged their own obligation and not an obligation for which the city was primarily liable as a tort-feasor.

As stated earlier, an absolute liability statute such as sec. 66.091, by its very nature and definition, does not render one a wrongdoer since liability is imposed without fault.

A well-reasoned decision which clearly indicates the undesirability of applying subrogation to the instant case is *William Burford & Co. v. Glasgow Water Co.* (1928), 223 Ky. 54, 2 S. W. 2d 1027. There several fire insurance companies brought an action against the municipal water company, claiming to have been subrogated to the rights of their insureds. It was their contention that the water company had, among other things, failed

to maintain the amount of water pressure required by its contract with the city. In sustaining a demurrer to the complaint the court, at pages 57 and 58, held that to have applied the subrogation doctrine would have been inimical to sound public policy in that:

". . . To meet the increased liability, higher water rates will be necessary. The added burden will fall on the consumers. The result will be that the citizens and property owners will not only pay for fire protection premiums sufficient to cover the risk assumed, but will also pay higher water rates for the purpose of relieving the insurance companies of the liability which they have been paid to assume. . . ."

In the instant case application of the doctrine would cause a similar result. While insurance companies, after receiving their premium, would continually be assured of recovery, the members of the community, who had not caused nor participated in riots, would be forced to bear the risk for which insurance companies had received premiums.

We conclude that under sec. 66.091, Stats., the city is not the equivalent of a wrongdoer. In so doing, we do not infer that subrogation is unavailable in all cases in which insurance companies have received premiums, but merely deny its application where, as here, the party against whom subrogation is sought is not a wrongdoer. Since the doctrine of subrogation is not applicable under the facts pleaded, it follows that the demurrer to the complaint was improperly overruled.

*By the Court.*—Order reversed.

HALLOWS, C. J. (*concurring*). The majority opinion denies subrogation on the grounds: (1) That the statute was not based upon any fault of the city and, therefore, subrogation does not lie; and (2) that it would be unjust to allow subrogation against the city because an insurance company in a sense would be recouping its loss from

its insured. I think the statute is based upon negligence of the city and upon its responsibility and duty to maintain law and order, and this underlying philosophy is not outmoded. However, I would deny subrogation on the sole ground an insurance company has a right of subrogation against those persons directly causing the damage and it is not good public policy for a court of equity to grant subrogation against the city which is only passively negligent and additionally liable by statute.