ESTATE OF LEASE: THORP SALES CORPORATION, Appellant,
v. LEASE, Administratrix, Respondent.*

*No. 247. Submitted under sec. (Rule) 251.54 January 4, 1974.—
Decided February 5, 1974.*
(Also reported in 214 N. W. 2d 418.)

* Motion for rehearing denied, with costs, on April 2, 1974.

The cause was submitted for the appellant on the briefs of *Whyte, Hirschboeck, Minahan, Harding & Harland, S. C.,* attorneys, and *James D. Wing* of counsel, all of Milwaukee, and for the respondent on the brief of *La Follette, Sinykin, Anderson & Abrahamson,* attorneys, and *Christopher J. Wilcox* and *Jay W. Winter* of counsel, all of Madison.

CONNOR T. HANSEN, J. This controversy arises out of a particular paragraph contained in an exclusive farm listing contract held by the plaintiff, and which reads as follows:

"If a sale or exchange is made or a purchaser procured by the Broker, by the undersigned Seller, or by any other person, at the price and upon the terms specified herein, or at any other terms and price accepted by the undersigned Seller, during the term of this contract, or if sold or exchanged within six (6) months after the termination of same to anyone with whom the Broker negotiated during the term of this contract and whose name the Broker has submitted to Seller in writing prior to the expiration date of this contract, the Seller agrees to pay Broker a commission of TEN per cent (10%) of the sale price."

Specifically, this controversy relates to the construction to be given to the six-month "override" provision contained in the foregoing paragraph of the listing contract.

The complaint alleges that Mary Jo Lease, defendant-respondent, is the administratrix of the estate of D. James Lease, deceased; that she is the widow of Lease and was at all times herein and prior to his death his lawful wife; that she was appointed administratrix on

January 14, 1970; that on May 31, 1969, D. James Lease, her husband, executed the exclusive listing contract previously referred to, and that at that time the legal and beneficial interest in the real estate was vested in Lease. The term of the contract extended to November 30, 1969. Lease was injured in an automobile accident on October 24, 1969, and died December 1, 1969. The decedent listed approximately 2,060 acres of farmland for a sale price of $550,000. The plaintiff's commission was to be 10 percent of the total purchase price.

The complaint further alleges that on or about September 8, 1969, Clifton L. Riley, agent of the plaintiff, commenced negotiations concerning the sale of the property to Boise Cascade Properties, Inc., of Chicago; that plaintiff expended considerable time and sustained considerable expense in the negotiations; that from the date of the accident to the date of his death, the only person who could see Lease was the defendant and that she could see him for a period lasting no more than ten minutes out of each hour; and that Lease conducted his business through the agency of the defendant; that on October 26, 1969, plaintiff's agent, Riley, was to see Lease but could not do so because of his physical condition; that on October 27, 1969, defendant called plaintiff's agent, Riley, at the request of Lease, to inform him (Riley) of the accident and to inquire about the status of the negotiations on the sale of the Lease farm; that defendant was informed of the negotiations with James Allen of Boise Cascade.

The complaint also alleges that on November 6, 1969, Allen, on behalf of Boise Cascade, executed an option agreement whereby, upon exercise of the option, Boise would pay $500,000 for 1,235 acres of the Lease farm. Defendant was verbally informed of this by plaintiff's agent, and she expressed her approval and said she would inform her husband the next time she visited him. Two hours later, the defendant telephoned plaintiff's agent

and demanded that the Lease farm be taken off the market. On November 10, 1969, plaintiff's agent notified Lease, in writing, that it had been negotiating with Boise Cascade and its agent, Allen. On December 22, 1969, Allen telephoned defendant, and defendant told him that plaintiff was not her agent any longer since her name was not on the listing contract; that the contract had expired; and that she would be happy to do business with him (Allen) after she was appointed administratrix on January 14, 1970.

It is further alleged that prior to the expiration of the six months' "override" provision, the defendant, in her capacity as the personal representative of her husband's estate, entered into an agreement with Allen of Boise Cascade. By the terms of the option agreement, Boise Cascade paid $20,000, received an option to purchase approximately 1,205 acres of the Lease farm for $482,000, and further agreed to indemnify the defendant against any loss arising out of any existing liability for payment of a real estate broker's commission, provided Boise Cascade had the exclusive right to conduct the negotiations and the legal defense of any such claim or demand. The option was exercised by Boise Cascade after the expiration of the six months' "override" period and the sale confirmed by the court. On March 11, 1970, the plaintiff commenced this action.

A summary of the foregoing facts presented with the complaint, reflects that a listing contract was entered into between a principal (seller) and a real estate broker. The contract provided that the broker would be entitled to a commission if the property was sold or exchanged within six months after the expiration of the contract to one with whom the broker had negotiated and whose name was submitted to the seller in writing prior to the expiration date of the contract.

Thus, the question involved on this appeal is:

*Does the death of the seller after the expiration of the contract terminate the broker's right to a commission?*

It has been stated many times that for the purposes of examining a complaint challenged by demurrer, the facts stated therein are assumed to be true.

Recently this court explained in *Theune v. Sheboygan* (1793), 57 Wis. 2d 417, 419, 420, 204 N. W. 2d 470, as follows:

". . . The purpose of a demurrer is to test the legal sufficiency of the pleading. *Interstate Fire & Casualty Co. v. Milwaukee* (1970), 45 Wis. 2d 331, 333, 173 N. W. 2d 187.

"Upon demurrer, a court is required to give liberal construction to the allegations of the complaint, and the demurrer for failure to state a cause of action must be overruled when the complaint expressly or by inference states a cause of action. *Chudnow Construction Corp. v. Commercial Discount Corp.* (1970), 48 Wis. 2d 653, 656, 180 N. W. 2d 697; *Volk v. McCormick* (1969), 41 Wis. 2d 654, 658, 165 N. W. 2d 185.

"When a complaint is tested on demurrer, it is not the duty of the court to hypothesize whether a plaintiff can prove the allegations. It is sufficient that the facts alleged, if proved, spell out a cause of action. *Rogers v. Oconomowoc* (1962), 16 Wis. 2d 621, 634, 115 N. W. 2d 635."

It is generally recognized that "[t]he relation of principal and agent can be terminated only by the act or agreement of the parties to the agency or by operation of law." 3 Am. Jur. 2d, *Agency,* p. 440, sec. 34.

Also, our attention has been directed to a considerable number of authorities and cases which establish the rule that the death of the agent or principal terminates the agency relationship. *See:* 2A C. J. S., *Agency,* p. 754, sec. 135; 3 Am. Jur. 2d, *Agency,* p. 140, sec. 51; 12 Am. Jur. 2d, *Brokers,* p. 818, sec. 63; Restatement, 2 *Agency* 2d, p. 366, sec. 453.

However, in the instant case, to state the rule is not to answer the question presented. Here the death of Lease did not terminate "the agency relationship" because "the agency relationship" had expired by the terms of the contract before he died.

What the respondent argues, and what the trial court found, is that, even though the agency agreement, by its terms, expired before the death of Lease, the six-month "override clause" somehow lapsed, was extinguished or terminated with the death of Lease after the expiration of the listing contract.

In the instant case, the agent did not earn his commission by actually selling the property before the contract terminated. The administratrix ultimately sold the property. If the agent earned the commission under the terms of the agreement it was by negotiating with, and presumably interesting, a certain buyer whose name was submitted to the principal in writing prior to the expiration of the contract in accordance with the provisions of the contract. The ultimate sale of the property after the contract had terminated was not within the control of the agent and required no further authorized action on the part of the agent. Thus, the fact that no "agency relationship" existed during the override period was immaterial and had no effect upon the agent's right to a commission.

In *Klapinski v. Polewski* (1963), 19 Wis. 2d 124, 119 N. W. 2d 424, the court considered a similar provision in a listing agreement relating to the agent's commission. The following language from *Dunn & Stringer Investment Co. v. Krauss* (1953), 264 Wis. 615, 619, 60 N. W. 2d 346, was cited with approval:

" 'The clause in question provides two conditions, both of which must concur, in order for a commission to be due on any sale made during the six-month period following the expiration date of the listing period. The first condition is that the broker must have negotiated with

the subsequent purchaser for the sale of the premises during the listing period. The second condition is that the broker must have filed the name of such subsequent purchaser with the owners prior to the expiration date of the listing period. Actual notice by the owners of the negotiations had between the broker and the subsequent purchaser is not a substitute for the filing requirement.' " *Klapinski v. Polewski, supra,* page 127.

More recently, in *E. M. Boerke, Inc. v. Williams* (1965), 28 Wis. 2d 627, 632, 137 N. W. 2d 489, the court again considered the requisites for recovery under a provision also similar to that in the instant case, and held as follows:

"Though it is clear that Boerke did negotiate with Sanderson during the life of the contract, that fact is not decisive of this particular lawsuit.
"The contract required not only 'negotiation' during the life of the contract, but, in addition, that the names of persons with whom negotiations are carried on must be *'filed* with me in writing *prior* to the termination of this contract.' (Emphasis supplied.) Thus, two added requirements must be met by the plaintiff if he is to recover. He must *'file'* the names in writing, and this action is required *prior* to the termination of the contract."

It was alleged in the complaint in the instant case that the agent Riley had negotiated with Allen of Boise Cascade during the term of the listing contract. Also, it was alleged in the complaint that on November 10, 1970, prior to the expiration of the contract, that D. James Lease was notified in writing of such negotiations. Therefore, both of the conditions necessary for recovery have been alleged.

*Hentges v. Wolff* (1953), 240 Minn. 517, 61 N. W. 2d 748, considered the broker's right to a commission under a similar broker's protection clause. In *Hentges* an exclusive sales contract provided that a brokerage partnership was entitled to a commission if the owner

sold certain property within three months after the termination of the contract to a person with whom the partnership had negotiated for the sale of such property and of which negotiations the owner had been advised. One of the partners died thereby terminating the contract. Prior to this termination of the contract, the partnership had negotiated with the individual who ultimately purchased the property after the contract terminated but prior to the expiration of the three-month protection clause or override period. In affirming the right to a commission, the court in *Hentges, supra,* page 520, explained as follows:

"By its clear terms the contract here was intended to serve one main purpose; namely, to bring about a sale of the property. The partnership could fulfill its obligations under the contract and earn its commission in two ways. (1) It could sell or contract to sell the property. (2) It could negotiate with persons for the sale of the property and inform the owner of the negotiations, thus making available prospective purchasers. However, in this latter instance the commission earned would be contingent upon the owner selling the property within three months next after the termination of the contract to one of these prospective purchasers. This latter alternative serves a dual purpose. Where a broker under a contract such as we have here claims a commission on a sale made by the owner after the termination of the contract on the grounds that he was the moving cause of such sale, he can only make such claim where the sale was made within the time specified in the contract. On the other hand under such a contract a definite period of time is fixed during which the owner of property cannot take the fruits of the broker's labor without compensation. The stipulated facts disclose that the partnership advertised the property and made every effort to find a purchaser. It entered into negotiations with the ultimate purchaser, and, although these negotiations were discontinued, defendant does not claim that the negotiations failed to come within the intended meaning of that term as it appears in the contract. It is therefore apparent that under the second alternative the partnership rendered full per-

formance, and at the time of the death of Reckoff the contract was not wholly executory."

In *Hentges* the agent died thereby terminating the agency relationship. In view of the rationale behind the rule of *Hentges*, it makes no difference whether the agent or principal dies, the agency relationship is terminated. In the instant case, the death of Lease could not have terminated an agency relationship because it had already expired under the terms of the agreement. However, the expiration of the agency relationship did not necessarily terminate the right of the agent to recover a commission if the ultimate sale or exchange occurred. In *Hentges*, *supra*, pages 521, 522, the court explained as follows:

"Here, the partnership had no further duties to perform under the clause of the contract under consideration to become entitled to a commission.

"Although the partnership's claim was contingent at the time of Reckoff's death, his death did not prevent the claim from becoming absolute when defendant sold the property. The act of the defendant, in selling the property to Dougherty, converted the contingent claim into an absolute one. No act of the partnership was necessary after the contract was terminated in order to fix liability on the defendant. It was the act of the defendant himself, in selling the property to Dougherty, that fixed his liability. It was, therefore, the right and duty of the surviving partner to wind up the affairs of the partnership, which included collecting the commission earned under the terms of the contract."

*See also: Hyde Park-Lake Park, Inc. v. Tucson Realty & Trust Co.* (1972), 18 Ariz. App. 140, 500 Pac. 2d 1128, affirming broker's right to commission on sale of property within ninety days after termination of listing agreement.

We have considered the authority cited by the respondent. In *Crowe v. Trickey* (1907), 204 U. S. 228, 27 Sup. Ct. 275, 51 L. Ed. 454, George W. Crowe brought an action against the administrator of the estate of Norman H. Chapin to recover $5,000 as commission on a

sale of a one-fourth interest in a mine alleged to have been effected by Crowe for Chapin, during Chapin's lifetime.

In the latter part of March, 1899, Chapin and one Neville agreed that Crowe should receive a 10 percent commission on the purchase money received by Chapin and Neville as a result of the sale of their interest in a mine to A. R. Wilfley. Crowe had brought this mine to the attention of Wilfley. Wilfley agreed that a deed to Chapin's and Neville's interest be placed in escrow; the terms of the escrow agreement provided that the deed was to be delivered to Wilfley upon the payment by him of $100,000 in cash, *on or before April 1, 1900*. Thus, Wilfley had one year within which to make the payment. During this one year period, both Chapin and Neville died. Wilfley did not make the payment and take the property under his option and, therefore, the property was returned to the administrators of the two estates after the escrow agreement expired. M. M. Trickey, the administrator of Chapin's estate ultimately sold Chapin's interest in the mine to Wilfley on June 19, 1900. In holding that Crowe was not entitled to a commission, the court explained as follows:

"The deaths of Chapin and Neville terminated the authority of Crowe to sell on commission, which was not a power coupled with an interest, that is, an interest in the property on which the power was to operate. . . .
"*Nevertheless, up to the first of April, 1900, if Wilfley had availed himself of the terms of the escrow agreement, the sale might have been completed and Crowe have been entitled to his commission,* but Wilfley did not do so, and the deed held in escrow was returned in accordance with the terms of that agreement." (Emphasis supplied.) *Crowe v. Trickey, supra,* page 240.

Thus, *Crowe v. Trickey, supra,* recognized that the agent Crowe would have become entitled to a commission *after* the death of the principal, Chapin, on January

11, 1900, up until April 1, 1900, if the sale had been consummated prior to April 1, 1900. The agent Crowe had completed his authorized acts on behalf of his principal before the agency relationship was terminated by the principal's death. In the instant case, the agent had also completed his authorized acts prior to the expiration or termination of the agency agreement and he became entitled to a commission after the death of the principal if the real estate was sold or exchanged within the six-month override period.

In *In re Ward's Estate* (1943), 47 N. M. 55, 134 Pac. 2d 539, the appellant (agent) argued that he had been employed by James D. Ward (principal), before Ward died, to sell certain properties at a specific price. In August of 1941, John F. Callioux began to inquire about the property and, through another person, received a prospectus on the property from the appellant. Ward died on September 11, 1941. Callioux was informed of the death of Ward when he attempted to contact him. In October, 1941, Callioux purchased the property from the heirs and the administratrix of Ward's estate. The administratrix knew nothing of the previous listing agreement with appellant which was terminated by Ward's death. *Citing Trickey v. Crowe* (1903), 8 Ariz. 176, 71 Pac. 965, as authority, the court held in *In re Ward's Estate, supra,* pages 57, 58, as follows:

"That the death of Ward revoked appellant's power to sell the property, is well settled. Unless he had earned his commission before Ward's death he is without remedy."

*Ward's* is consistent with the general rule of termination of agency by death of one of the parties. The acts which the agent is authorized to perform in the name of the principal must be completed before the principal dies, thereby terminating the agency relationship, and such acts were not completed in *Ward's*. In the case

before us, it was not necessary for the agent to do anything further in order to earn his commission. It was simply necessary for the property to be sold within six months after termination by "any other person," to a person with whom the agent had negotiated and whose name was timely submitted in writing to the principal.

In *Thornton v. Lewis* (1962), 106 Ga. App. 328, 126 S. E. 2d 869, property was listed with the agent for sale upon specific terms. Potential purchasers were secured by the agent who offered to buy the property, but whose offer varied from that which the principal had demanded in the listing agreement. The principal died and the property was ultimately sold by the administrator to those persons who had earlier offered to purchase the property. Thus, the agent in *Thornton* had not done that which he was authorized to do by the principal before the principal's death terminated the relationship.

*Johnston Estate* (1958), 16 Pa. D. & C. 2d 706, cites as authority general principles of agency recognized in A. L. I. *Restatement of the Law of Agency*, sec. 453; 146 A. L. R. 828, and 8 Am. Jur., *Brokers*, p. 1010, sec. 48. The agent had an agreement with the guardian of an incompetent lessor whereby a commission would be paid if the real estate was sold to the tenants during the term of the lease or within a reasonable period thereafter. After the death of the landlord, the agent negotiated a sale with the tenant. The court denied the agent a commission because the agent's efforts to procure the sale took place after the death of the landlord. In the instant case, the complaint alleges the plaintiff's negotiations were during the term of the agency agreement and prior to the death of Lease.

We are not required to hypothesize whether the plaintiff can prove the allegations of the complaint. The requirement is that we give a liberal construction to the allegations of the complaint. Therefore, we arrive

at the conclusion that the complaint did state a cause of action and the demurrer of the respondent should have been overruled.

*By the Court.*—Order sustaining the demurrer and the order denying reconsideration of such order are reversed, and the cause is remanded for further proceedings.