AMERICAN FAMILY MUTUAL INSURANCE
COMPANY, a domestic corporation, Plaintiff-
Respondent and Cross-Respondent,

v.

CITY OF MILWAUKEE, a municipal corporation,
Defendant-Appellant,†

Vernon L. MOSLEY, Defendant-Respondent and
Cross-Appellant. [Case No. 87–2268.]

AMERICAN FAMILY MUTUAL INSURANCE
COMPANY, Plaintiff-Respondent,

v.

CITY OF MILWAUKEE, Defendant-Appellant,

Patricia K. STANZER, Defendant. [Case No.
88–0260.]

Court of Appeals

*Nos. 87–2268, 88–0260. Submitted on briefs September 6,
1988.—Decided December 21, 1988.*

(Also reported in 435 N.W.2d 280.)

† Petition to review denied.

For the plaintiff-respondent-cross-respondent
American Family Mutual Insurance Company, the

cause was submitted on the briefs of *Simarski & Stack, Ltd.* by *Wayne M. Yankala,* of Milwaukee.

For the defendant-appellant City of Milwaukee, the cause was submitted on the briefs of *Grant F. Langley,* city attorney, with *Joseph H. McGinn* and *Maurita Houren,* assistant city attorneys, of Milwaukee.

For the defendant-respondent-cross-appellant, Vernon L. Mosley, the cause was submitted on the briefs of *Previant, Goldberg, Uelmen, Gratz, Miller & Brueggeman, S.C.,* by *Dean M. Horwitz* and *Hope K. Olson,* of Milwaukee.

Before Moser, P.J., Sullivan and Fine, JJ.

SULLIVAN, J. The court of appeals consolidated case no. 87-2268 and case no. 88-0260 for appeal because both cases involve appellate review of the trial court determination that sec. 66.189, stats., requires the city to provide uninsured motorist coverage. *See* sec. 809.10(3), Stats. In case no. 87-2268, the City of Milwaukee (City) appeals from a declaratory judgment (1) denying its motion to dismiss American Family Mutual Insurance Company's (American Family) complaint for failure to state a claim for which relief can be granted, and (2) granting American Family a judgment declaring that sec. 66.189, Stats. required the City to self-insure for uninsured motorist coverage.

The facts of the case are undisputed. Vernon L. Mosley (Mosley), a City of Milwaukee police officer, was injured in the course of his duties when he was struck by an uninsured motorist operating a pickup truck. At the time of the accident, Mosley was insured by a personal automobile liability insurance policy issued to him by American Family. Mosley cross-appeals the declaratory judgment because it determined

that the City is primarily liable for damages.[1] Mosley contends that American Family's and the City's liability is joint and several.

In case no. 88–0260, the City appeals from an order declaring that it is primarily liable to Patricia Stanzer (Stanzer). Stanzer was a passenger in a police squad car driven by police officer Robert Heder when the vehicle was struck by an uninsured motorist. At the time of the accident, Stanzer was insured by a personal automobile liability policy issued to her by American Family. In her complaint, Stanzer alleged that the City was primarily liable for her damages and that American Family was an excess carrier.

American Family filed a motion for a declaratory judgment seeking a determination of whether American Family or the City was primarily liable to Stanzer, and the City filed a motion for summary judgment seeking dismissal of the action. The trial court granted the City's summary judgment motion, and denied American Family's motion. Pursuant to a subsequent stipulation and order, Stanzer was dismissed, on the merits, from the action.

American Family filed a motion to reconsider the summary judgment based on the Mosley case. In an order vacating judgment, the trial court granted American Family's motion for declaratory judgment and concluded that the City was primarily liable for Stanzer's damages. The City appeals the trial court's order because it contends that sec. 66.189 does not apply if the City is unable to obtain an insurance policy.

---

[1]American Family requested *inter alia* a declaration that the City's uninsured motorist coverage was primary and that its coverage was excess.

## SECTION 66.189, STATS.

The central issue on this appeal is whether the City had a mandatory duty to provide uninsured motorist coverage under sec. 66.189, Stats. The statute provides:

> **Uninsured motorist coverage; 1st class cities.** A 1st class city shall provide uninsured motorist motor vehicle liability insurance coverage for motor vehicles owned by the city and operated by city employes in the course of employment. The coverage required by this section shall have at least the limits prescribed for uninsured motorist coverage under s. 632.32(4)(a).

Sec. 66.189, Stats.

The City argues that the statute requires it to purchase a policy of uninsured motorist insurance and does not require it to self-insure. The City further contends that because it could not obtain an uninsured motorist policy, the statute imposed no liability. American Family asserts that sec. 66.189 mandates coverage, and if the City could not obtain a policy, it had a duty to self-insure.[2]

Section 806.04(1), Stats., empowers courts to "declare rights, status, and other legal relations whether or not further relief is or could be claimed." Section 806.04(2), Stats., provides in part: "Any person ... whose rights, status or other legal relations are affected

---

[2]Section 344.16(1), Stats., provides for self-insurance for purposes of financial responsibility. It provides:

Requirements as to self-insurers.

(1) Any person in whose name more than 25 motor vehicles are registered may qualify as a self-insurer by obtaining a certificate of self-insurance issued by the secretary as provided in sub. (2).

by a statute ... may have determined any question of construction or validity arising under the ... statute ... and obtain a declaration of rights, status or other legal relations thereunder." Both trial courts held that under sec. 66.189, Stats., the City had a duty to obtain uninsured motorist coverage.

The application of a statute to a set of undisputed facts presents a question of law which we review independently without deference to the trial court. *Ball v. District No. 4, Area Bd.,* 117 Wis. 2d 529, 537, 345 N.W.2d 389, 394 (1984). The parties agree that sec. 66.189, Stats., is unambiguous. We conclude that reasonable persons could not understand the statute differently. *See City of Milwaukee v. Dyson,* 141 Wis. 2d 108, 110, 413 N.W.2d 660, 661 (Ct. App. 1987). Absent ambiguity, we are required to implement the express intention of the legislature by giving the language in the statute its ordinary and accepted meaning. *DNR v. Wisconsin Power & Light Co.,* 108 Wis. 2d 403, 408, 321 N.W.2d 286, 288 (1982). We conclude that sec. 66.189 unambiguously requires the City to provide uninsured motorist coverage for its vehicles.

■ Section 66.189, Stats., states that "[a] 1st class city *shall* provide uninsured motorist motor vehicle liability insurance coverage ...." (Emphasis added.) The word "shall" is presumed to be mandatory when it appears in a statute. *Karow v. Milwaukee County Civil Serv. Comm'n,* 82 Wis. 2d 565, 570, 263 N.W.2d 214, 217 (1978). The word "coverage" is found in both sentences of the statute. The phrase "liability insurance" is adjectival and describes the nature of the coverage. Although the statute makes it mandatory to obtain uninsured motorist coverage, the statute does not mandate the City's purchase of an insurance policy to

285

meet the requirement. The statute does not specifically state how the City should obtain coverage. *See* sec. 66.189.

Both circuit courts, in this case, concluded that, under the circumstances, no uninsured motorist insurance was obtainable and, hence, the City was required to become self-insured. The statute, however, contains no such requirement. The City is free to self-insure if it desires. Alternatively, it may use any other lawful method to provide uninsured motorist coverage, including formation of a municipal insurance mutual as provided by sec. 611.11(4), Stats.[3]

■

The City asserts that it attempted, but was unable, to obtain a policy containing uninsured motorist coverage. The record fails to confirm this. In fact, the City purchased liability coverage which of necessity included uninsured motorist coverage.[4] However, this insurance was cancelled September 21, 1985. In both cases, James J. Povlich, CPCU,[5] supplied an affidavit in support of the City's position. He stated that the City requested him "to arrange" uninsured motorist coverage mandated by sec. 66.189, Stats., in February 1986. His efforts continued to August of 1986. He contacted thirty-five insurers, of which thirty-two either declined

---

[3]Section 611.11(4), Stats., provides:

Municipalities. Any number of municipalities or associations of municipalities or both may organize a municipal insurance mutual under s. 611.13, subject to s. 611.23, to provide liability insurance and risk management services for its members.

[4]Section 632.32(1), Stats., mandates uninsured motorist insurance for "every policy of insurance issued or delivered in this state" on account of insured's liability for loss or damage caused by accident.

[5]Chartered Property Casualty Underwriter.

to provide a quotation or were not interested. Three declined to quote for uninsured motorist coverage only. Apparently, the City did not seek out quotes for liability insurance which would have included uninsured motorist coverage. In any event, the City was required to provide uninsured motorist coverage whether or not it was able to find a carrier willing to underwrite the risk.

## WRIT OF MANDAMUS

The City argues that because it is not an insurer, sec. 66.189, Stats., must be enforced through a writ of mandamus. We disagree.

The City relies on *Cords v. State*, 62 Wis. 2d 42, 214 N.W.2d 405 (1974), for its position. In *Cords*, three young girls and their fathers brought an action against the State of Wisconsin for the girls' personal injuries caused by negligent state employees. The plaintiffs alleged that sec. 270.58, Stats. [now 895.46(1)] made the state an insurer of negligent state employees and therefore the direct action statute, sec. 204.30(4), Stats. [now sec. 632.24, Stats.], normally used against insurers, could be applied to the state. The supreme court held that the state enjoyed sovereign immunity under the constitution, absent statutory consent to be sued. *Id.* at 51–53, 214 N.W.2d at 410–11. The court concluded that "[w]hatever duty exists on the part of the state is statutory and enforceable, if at all, through an action in mandamus." *Id.* at 56, 214 N.W.2d at 413.

■

Unlike the state, which could not be joined as an indemnitor absent statutory consent under sec. 270.58, Stats., the City can be joined in an action where the plaintiff seeks indemnity. *See* sec. 895.46, Stats. The

287

City is not entitled to sovereign immunity. *See Fiala v. Voight,* 93 Wis. 2d 337, 348, 286 N.W.2d 824, 830 (1980). Therefore, *Cords* is not analogous to this case and no writ of mandamus is required.

## PUBLIC PURPOSE DOCTRINE

The City argues for the first time on appeal that sec. 66.189, Stats., is unconstitutional because it runs contrary to the public purpose doctrine. Although the doctrine is not found in any specific clause of the Wisconsin constitution, it is a "well-established constitutional tenet." *State ex rel. Warren v. Nusbaum,* 59 Wis. 2d 391, 413-14 & n. 8, 208 N.W.2d 780, 795 & n. 8 (1973). It prohibits, as constitutionally "abhorrent," expenditure of public funds for other than a public purpose. *Id.* at 414, 208 N.W.2d at 795. The public purpose doctrine also limits the expenditure of municipal monies. *Hopper v. City of Madison,* 79 Wis. 2d 120, 128, 256 N.W.2d 139, 142 (1977). The legislature determines what constitutes public purpose and its opinion should be accorded great weight. *Id.* The presumption of constitutionality that attends a statute is strong and it is our duty to construe it as harmonious with constitutional principles. *Id.*

The City points to the requirement in sec. 66.189, Stats., that it provide uninsured motorist coverage for certain persons and argues that rather than advancing a public purpose, the statute merely benefits a limited group: city employees and others while passengers in city vehicles.

Whether to consider constitutional issues raised for the first time on appeal is within the discretion of this court. *Binder v. City of Madison,* 72 Wis. 2d 613, 621, 241 N.W.2d 613, 617 (1976). An appellate court

may consider the issue if "it is in the interests of justice to do so, if both parties have had an opportunity to brief the issue and if there are no factual issues that need resolution." *Laufenberg v. Cosmetology Examining Bd.,* 87 Wis. 2d 175, 187, 274 N.W.2d 618, 624 (1979).

In *Laufenberg,* the supreme court declined to review the constitutionality of statutes mandating a three-year barber apprenticeship for a cosmetologist seeking a barber's license. The court noted that the issue was raised for the first time on appeal and that there was no factual basis to establish the unreasonableness of the statutes. *Id.* Likewise, this issue was not raised below and therefore we cannot determine whether sec. 66.189, Stats., suffers from unreasonableness without a minimal factual showing of how many vehicles, employees, and passengers are involved and the related costs. We conclude that it is inappropriate to determine the constitutionality of sec. 66.189 absent a factual basis to establish unreasonableness.

## CROSS APPEAL

Mosley cross appeals from the judgment because it determined that American Family's policy was excess to the City's statutory duty to provide coverage. The circuit court held that American Family provided excess coverage, although the City had "no insurance policy in effect at the time of the accident." We disagree.

The relevant parts of American Family's policy, which was issued to Mosley, provide:

DEFINITIONS USED THROUGHOUT THIS POLICY

As used throughout this policy, except where redefined, and shown in bold type:

...

4. *Occupying* means in, on, getting into or out of, and in physical contact with.

...

PART III—UNINSURED MOTORIST COVER-AGE

*You* have this coverage if Uninsured Motorist coverage is shown in the declarations. *We* will pay damages for *bodily injury* which an *insured person* is legally entitled to recover from the owner or operator of an *uninsured motor vehicle*. The *bodily injury* must be caused by accident and arise out of the *use* of the *uninsured motor vehicle*.

...

OTHER INSURANCE

If there is other similar insurance on a loss covered by this Part, *we* will pay *our* share according to this policy's proportion of the total limits of all similar insurance. But, any insurance provided under this Part for an *insured person* while *occupying* a vehicle *you* do not own is excess over any other similar insurance. [Emphasis in original.]

Construction of an insurance contract is a question of law and we accord no deference to the circuit court's decision. *Shelley v. Moir,* 138 Wis. 2d 218, 222, 405 N.W.2d 737, 739 (Ct. App. 1987). Absent ambiguity, policy language should be given its plain and ordinary meaning. *Paape v. Northern Assurance Co.,* 142 Wis. 2d 45, 51, 416 N.W.2d 665, 668 (Ct. App. 1987). The parties allege no ambiguity and we perceive none.

It is undisputed that the City carried no uninsured motorist insurance for this accident. However, we

conclude that the phrase "other similar insurance" found in American Family's policy is sufficiently broad to encompass the coverage mandated by sec. 66.189, Stats. Therefore, we must analyze the "other insurance" clause in American Family's policy.

In this case, Mosley's American Family policy states that its uninsured motorist coverage is excess over any other similar insurance if an insured person is *occupying* a vehicle that he or she does not own.[6] The policy defines "occupying" as "in, on, getting into or out of *and in physical contact with*." [Emphasis added.]

The facts are undisputed. Prior to the accident, Mosley stopped to investigate a burglary. After his investigation, he returned to his squad car and got into it. Before Mosley could leave the scene, a person approached the car to ask him a question. Mosley got out of the vehicle to answer the question. After the discussion was completed, Mosley started to get back into his vehicle when a second person approached him with a question. Mosley remained on the street while attempting to answer the question. Seconds later, Mosley was struck by an uninsured motorist. Mosley estimated that he was approximately five inches away from the squad car when he saw the uninsured motorist

---

[6]The circuit court was directed to the wrong clause in the American Family policy. In its judgment, the circuit court interpreted an "other insurance" clause which was contained in the liability section of the policy. The clause provided that:

> If there is other auto liability insurance for the loss covered by this part, we will pay our share according to this policy's portion of the total of all liability limits. But, any insurance for a vehicle you do not own is excess over any other collectible auto liability insurance.

Therefore, the issue of whether Mosley was "occupying" the vehicle, under the American Family policy, was never addressed by the circuit court.

291

approaching. He could not recall coming into physical contact with the vehicle during the accident.

There is no evidence that at the time of the accident Mosley was in physical contact with the vehicle. Therefore, according to the policy, he was not occupying the vehicle, and American Family's liability is not excess over the City's liability. We conclude that the first sentence of American Family's "other insurance" clause applies in this case: "If there is other similar insurance on a loss covered by this Part, *we* will *pay* our share according to this policy's proportion of the total limits of all similar insurance." [Emphasis in original.] Under the first sentence of the clause, the total limits of all similar uninsured motorist insurance, including American Family's policy, are added together to determine what proportion of the damages American Family will pay. American Family's policy provided for $100,000 in uninsured motorist coverage per person, and under secs. 66.189 and 632.32, Stats., the City's liability is $25,000. Since $100,000 is eighty percent of $125,000, American Family's proportionate share is eighty percent of Mosley's damages, up to its policy limit of $100,000. The City is liable for the remaining twenty percent, up to $25,000. We reverse that portion of the circuit court's judgment which found that American Family was an excess carrier.

In summary, we determine that: (1) Sec. 66.189 is unambiguous; (2) it requires the City to provide uninsured motorist coverage for officer-employees and passengers; (3) American Family was not required to enforce sec. 66.189, Stats. through a writ of mandamus; (4) we will not exercise our discretion to determine the constitutionality of sec. 66.189, Stats., as allegedly violative of the public purpose doctrine; and (5) Ameri-

292

can Family's insurance coverage is not excess and American Family is liable for a prorated share of Mosley's damages up to its policy limits.

*By the Court.*—Order affirmed and judgment affirmed in part and reversed in part.