MILLERS NATIONAL INSURANCE COMPANY, Plaintiff-Appellant,

v.

CITY OF MILWAUKEE, Defendant-Respondent.†

Court of Appeals

*No. 91–2536. Submitted on briefs January 6, 1993.—Decided June 8, 1993.*

(Also reported in 503 N.W.2d 284.)

†Petition to review granted.

573

574

For the plaintiff-appellant the cause was submitted on the briefs of *Ernest J. Philipp* and *Maria K. Myers* of *Davis & Kuelthau, S.C.*, of Milwaukee.

For the defendant-respondent the cause was submitted on the briefs of *Nick G. Kotsonis* of *Riordan, Crivello, Carlson, Mentkowski & Steeves, S.C.*, of Milwaukee.

Before Sullivan, Fine and Schudson, JJ.

SULLIVAN, J.   Millers National Insurance Company (Millers National) appeals from a summary judgment denying its $25,000 subrogation claim against the City of Milwaukee (City) arising from payment of $42,303.63 to its insured, Michael McGuire. Millers National argues that it has a subrogated right to funds that McGuire was entitled to receive from the City under sec. 66.189, Stats.[1]

The facts, as presented on the summary judgment motion, were undisputed. McGuire, a police officer for the City, was operating a city motorcycle in the course of his employment when he was struck and injured by an uninsured motorist. Because sec. 66.189, Stats., requires the City to provide UM coverage on its vehi-

---

[1] Section 66.189, Stats., provides:

**Uninsured motorist coverage; 1st class cities.** A 1st class city shall provide uninsured motorist motor vehicle liability insurance coverage for motor vehicles owned by the city and operated by city employes in the course of employment. The coverage required by this section shall have at least the limits prescribed for uninsured motorist coverage under s. 632.32(4)(a).

Section 632.32(4)(a), Stats., provides that the minimum limits for uninsured motorist coverage is $25,000 per person, $50,000 per accident. Milwaukee is a first class city. *See* sec. 62.05(1)(a), Stats. ("Cities of one hundred and fifty thousand population and over shall constitute cities of the first class.").

cles that are operated by city employees, McGuire initially believed that he would receive coverage for his injuries from the City. McGuire subsequently learned, however, that the City's position was that no such benefits were available to him because the City's UM coverage had been canceled several months before his accident. Thus, McGuire did not submit a claim to the City, and instead applied directly to his own auto insurance company, Millers National, for coverage. Millers National paid Officer McGuire under the terms of its uninsured motorist (UM) liability policy provision. McGuire's damages, $42,303.63, were set by arbitration under the terms of a personal auto liability insurance policy issued to him by Millers National.

Millers National then requested reimbursement from the City in the amount of $25,000—the minimum amount of UM coverage the City is required to provide under sec. 66.189, Stats. The City refused to make such payment to Millers National and Millers National filed this suit. The trial court granted the City's subsequent motion for summary judgment based on its conclusion that Millers National had neither a contractual nor an equitable subrogated right to recover from the City. The trial court did not address the City's claim that allowing Millers National to recover from the City based on sec. 66.189, would be unconstitutional as violative of the "public purpose doctrine."[3]

---

[3] This constitutional argument was raised in the City's motion for declaratory judgment. That motion was filed after the trial court had denied the City's initial motion for summary judgment. The court subsequently reconsidered and granted the City's motion for summary judgment, and thus, never reached the constitutional issue raised in the motion for declaratory judgment.

On appeal, Millers National asserts both a contractual and an equitable right of subrogation against the City in the amount of $25,000. The City argues that Millers National has no subrogated right to recover such funds, and reasserts its claim that sec. 66.189, if applied to this subrogation claim, would unconstitutionally permit payment contrary to the public purpose doctrine. We conclude that Millers National is entitled to contractual subrogation, and therefore, we do not address equitable subrogation. We reject the City's constitutional argument and reverse the judgment of the trial court.

## STANDARD OF REVIEW

The standard of review for summary judgment mandates our application of the standards set forth in sec. 806.02, Stats., in the same manner as the circuit court. *Voss v. City of Middleton,* 162 Wis. 2d 737, 748, 470 N.W.2d 625, 629 (1991). The methodology for summary judgment has been fully set forth in *Voss*, and need not be repeated here. *See id.* at 747-48, 470 N.W.2d at 628-29. "When reviewing a summary judgment determination, we will reverse where the trial court has incorrectly decided a legal issue." *Germanotta v. National Indem. Co.*, 119 Wis. 2d 293, 297, 349 N.W.2d 733, 735 (Ct. App. 1984). The trial court based its decision to grant summary judgment on its legal conclusion that no right of subrogation existed on the undisputed facts. Because the trial court incorrectly decided that legal issue, we reverse.

## SECTION 66.189, STATS.

Section 66.189, Stats., "unambiguously requires the City to provide uninsured motorist coverage for its vehicles." *American Family Mut. Ins. Co. v. City of Milwaukee*, 148 Wis. 2d 280, 285-86, 435 N.W.2d 280, 283 (Ct. App. 1988). The City, however, is not required to purchase such insurance; it may provide coverage through self-insurance or other similar means. *Id.* at 286, 435 N.W.2d at 283 (city's options include self-insurance and formation of a municipal insurance mutual under sec. 661.11(4), Stats.). The City does not dispute this statement of the law. The statute has, in effect, put the City in the insurance business. For the purposes of addressing the subrogation issue, we will treat the City as we would any insurer.

## SUBROGATION

The City conceded to the trial court that if Officer McGuire had made a claim for uninsured motorist coverage after this court's decision in *American Family*, he would have received such coverage from the City. The City argues, however, that Millers National has no subrogated right to that same coverage.

"Subrogation is the right of the insurer to be put in the position of the insured in order to pursue recovery from third parties legally responsible to the insured for a loss paid by the insurer." 16 COUCH ON INSURANCE 2d § 61:1 (Rev. ed. 1983). Subrogation clauses are used by insurance companies to avoid duplication in coverage, and thus, to reduce premiums. *See Associated Hosp. Serv., Inc. v. Milwaukee Auto. Mut. Ins. Co.*, 33 Wis. 2d 170, 174, 147 N.W.2d 225, 227 (1967). "The right of

subrogation can arise by statute, through equity or by contract." *Dailey v. Secura Ins. Co.*, 164 Wis. 2d 624, 628, 476 N.W.2d 299, 300 (Ct. App. 1991). Millers National argues that its right to subrogation exists through equity and contract.[4] To determine whether a contractual right of subrogation exists, we examine the insurance policy, interpreting it as would a reasonable person in the position of the insured, and giving ordinary meaning to the language. *Id.*

This is not our first occasion to consider whether one insurer can assert a claim against another insurer on the basis of contractual subrogation. In *Dailey*, we allowed such a claim. *Id.* at 627, 476 N.W.2d at 300. The Daileys, like Officer McGuire, had been involved in an auto accident with an uninsured motorist. *Id.* After having paid all medical expenses, the Daileys' health insurer sought reimbursement from the Daileys' auto insurer. The health insurer had, in its contract with the Daileys, a clause which provided that the insurer " 'shall be subrogated to the rights, claims, interest and causes of action which the Covered Participant may have against any party who may be liable for injury, illness or other loss of the Covered Participant . . . .' " *Id.* at 628-29, 476 N.W.2d at 301. Thus, we explained that "to the extent that [the health insurer] has paid the Daileys, it succeeds to the Daileys' rights to recover from *any* party who is liable." *Id.* at 629, 476 N.W.2d at 301.

---

[4] Statutory subrogation does not apply in this case. "Statutory subrogation is a right that exists only against a wrongdoer. Because an uninsured motorist insurer does not stand in the shoes of the uninsured motorist, it is not a wrongdoer and statutory subrogation cannot exist against it." *Dailey*, 164 Wis. 2d at 628, 476 N.W.2d at 300 (citations omitted).

In *Dailey*, we also pointed out the distinction between that case and *Employers Health Insurance v. General Casualty Co.*, 161 Wis. 2d 937, 945-55, 469 N.W.2d 172, 175-79 (1991), in which the Wisconsin supreme court held that no contractual subrogation right existed. Unlike the contractual clause in *Dailey*, the clause in *Employers Health* allowed a subrogated right against a "responsible third party," which the supreme court interpreted to mean the "wrongdoer causing the injury." *Employers Health*, 161 Wis. 2d at 950, 469 N.W.2d at 177.

The clause in the Millers National contract provided:

> If we make a payment under this policy and the person to or for whom payment was made has a right to recover damages from another we shall be subrogated to that right.

"Another," in its ordinary meaning, encompasses all parties other than the insured. *See Oakley v. Fireman's Fund of Wisconsin*, 157 Wis. 2d 77, 81-82, 459 N.W.2d 461, 463 (Ct. App. 1990) (citing WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 89 (1976)), *rev'd on other grounds*, 162 Wis. 2d 821, 470 N.W.2d 882 (1991). Thus, the word "another," as found in the Millers National Insurance policy, includes the City, which by statute was required to provide UM coverage. Upon payment, Millers National succeeded to Officer McGuire's rights against the City.

We reject the City's argument that this conclusion would be contrary to the holding of the supreme court in *Interstate Fire & Casualty Co. v. City of Milwaukee*, 45 Wis. 2d 331, 173 N.W.2d 187 (1970), and *American Insurance Co. v. City of Milwaukee*, 51 Wis. 2d 346, 187

N.W.2d 142 (1971). In those cases, the supreme court denied the subrogated claims of insurers against the city of Milwaukee. The claims were based on sec. 66.091, Stats., which provides for direct liability of a county or city " '[f]or injury to person or property by a mob or riot . . . .' " *Interstate Fire & Casualty*, 45 Wis. 2d at 332-33, 173 N.W.2d at 188-89; *American Ins.*, 51 Wis. 2d at 349, 187 N.W.2d at 143. The supreme court rejected the hypothesis that sec. 66.091 positioned the City as a liable wrongdoer or tortfeasor against whom subrogation would be equitable. *Interstate Fire & Casualty*, 45 Wis. 2d at 339, 173 N.W.2d at 192; *American Ins.*, 51 Wis. 2d at 352, 187 N.W.2d at 145.

Section 66.189, Stats., unlike sec. 66.091, Stats., explicitly requires the City to provide insurance coverage. The statute has, in effect, put the City into the insurance business for purposes of UM coverage for its employees who drive city-owned vehicles. Thus, this case involves one insurer requesting another insurer to pay its fair share of a claim, and not the City as an alleged tortfeasor.[5]

In conclusion, the parties agree that Officer McGuire had a right to recover against the City for his

---

[5] As noted earlier in this opinion, this court has previously allowed a contractual subrogation claim between two insurers. *See Dailey*, 164 Wis. 2d 624, 476 N.W.2d 299. In *Employers Health*, 161 Wis. 2d at 957-58, 469 N.W.2d at 180, the supreme court addressed the related question of whether unjust enrichment requires *equitable* subrogation between two insurers. In that case, the court concluded that the plaintiff insurer had failed to present an adequate record to show that the other had been unjustly enriched. *Id.* Unlike the case at bar, however, both insurers in *Employers Health* had paid the insured's claims. *See id.* at 942-43, 948, 469 N.W.2d at 174, 176.

injury caused by the uninsured motorist. The contractual subrogation provision allows Millers National to stand in Officer McGuire's shoes and we see no reason why Officer McGuire's right to recover against the City should not apply to Millers National as well.

Because we conclude that Millers National is entitled to recover upon the theory of contractual subrogation it is unnecessary to discuss equitable subrogation. *See Oakley*, 157 Wis. 2d at 83, 459 N.W.2d at 463-64 (this court need not address other methods of subrogation where we have found express provision in policy). Where subrogation is by contract, "the rights of the parties are controlled by the contract rather than the equities normally prevailing." 16 COUCH ON INSURANCE 2d § 61:3 (Rev. ed. 1983).

## PUBLIC PURPOSE DOCTRINE

The City also argues that to allow subrogation in this case would be unconstitutionally violative of the public purpose doctrine.[6] Although the issue was not addressed by the trial court,[7] the facts are undisputed,

---

[6] The public purpose doctrine, though not specifically provided in the state constitution, is a well established constitutional tenet. *Hopper v. City of Madison,* 79 Wis. 2d 120, 128, 256 N.W.2d 139, 142 (1977). " 'Public funds may be expended for only public purposes. An expenditure of public funds for other than a public purpose would be abhorrent to the constitution of Wisconsin.' " *Id.* (citation omitted). This rule applies to expenditure of public funds by municipalities. *Id.*

[7] Although the City did not plead the doctrine as an affirmative defense in its answer it was briefed and submitted to the trial court upon the City's later motion for declaratory judgment. The court, however, did not reach the defense because it dismissed the action on the basis that Millers National had no

the matter has been briefed, and a clear issue of law is presented that is likely to recur upon remand. Under these circumstances we conclude that this court may address and dispose of the issue.[8]

The City acknowledges that ordinarily a municipality lacks standing to challenge the constitutionality of a statute. *See City of Madison v. Ayers,* 85 Wis. 2d 540, 544, 271 N.W.2d 101, 103 (1978). It invokes an exception to this rule which permits a challenge if the issue is of great public concern. *Id.* at 545, 271 N.W.2d at 103. The supreme court has stated that diversion of public funds for a private purpose is a matter of great public concern. *See Fulton Found. v. Department of Taxation,* 13 Wis. 2d 1, 13, 108 N.W.2d 312, 318 (1961). Thus, we address the issue presented.

The City argues that the purpose of sec. 66.189, Stats., is to provide people who use its vehicles with UM coverage. When a person is injured and receives UM benefits from a private insurer to the full extent of his claim, the City contends the purpose of sec. 66.189 has been realized. The City argues that to require it

---

right of subrogation. The court's action was consistent with the rule that a constitutional disposition should be avoided if the case can be decided on some other ground. *See Labor & Farm Party v. Elections Bd.,* 117 Wis. 2d 351, 354, 344 N.W.2d 177, 179 (1984).

[8] Preliminarily, we take up Millers National's objection to the City's failure to serve the attorney general with a copy of the proceedings under sec. 806.04(11), Stats. The City has moved the court to supplement the record with a letter of the attorney general to the trial court stating that he had been furnished with a copy of the pleading and has decided not to become "involved" in the matter. Millers National does not object and we grant the motion to supplement. *See* sec. 809.14(1), Stats.

now to reimburse Millers National will confer a benefit only upon Millers National and no citizen will derive any benefit whatsoever. The City fervently argues that the payment's effect would be to indemnify Millers National against its loss and would not benefit Officer McGuire. The City states that its position is encapsulated in *Wisconsin Keeley Institute Co. v. Milwaukee County*, 95 Wis. 153, 160, 70 N.W. 68, 74 (1897) (citation omitted):

> It is inherent in the idea of taxation that it should be for the public good; and a law taxing one set of [individuals] for the benefit of another, or in furtherance of an industrial enterprise in which they were engaged, would be regarded as confiscation in all civilized countries.

In reviewing a "legislative expenditure of public funds, there is a strong presumption that a legislature's acts are constitutional, and it is the duty of this court, if possible, to construe a legislative enactment as to find it in harmony with constitutional principles." *Hopper v. City of Madison*, 79 Wis. 2d 120, 128, 256 N.W.2d 139, 142 (1977). We are not concerned with the "wisdom, merits or practicability of the legislature's enactment." *Id.* at 129, 256 N.W.2d at 143. Rather, we are to determine whether a "public purpose can be conceived which might reasonably be deemed to justify or serve as a basis for the expenditure." *Id.*

Millers National argues that, to find a constitutionally sufficient justification for the expenditure, this court need look no further than the legislature's primary purpose for enacting sec. 66.189, Stats., as

illustrated in the legislative history of that statute.[9] That history shows that the statute was proposed in response to concerns of the police union, which had been informed that the City had discontinued UM coverage on city vehicles and that the police officers were to rely on their own private auto insurers for such coverage.[10] It was the City's position that because it had discontinued all insurance policies on city-owned vehicles in 1976, sec. 632.32(4)(a), Stats., requiring all policies to include UM coverage, was inapplicable to the City.[11] Finally, after unsuccessful negotiations with the City, the police union made the following statement:[12]

> The Milwaukee Police Association STRONGLY SUPPORTS legislation aimed at affording police officers, as well as all other city workers for that matter, with complete insurance protection. As state statute (632.32) mandates this coverage where private carriers are concerned there is no reason self-insured entities should be able to escape

---

[9] The documents contained in the Legislative Reference Bureau's file on this statute have been made part of the record on appeal.

[10] This information is found in a letter dated June 8, 1982, from the Milwaukee Police Association to the Milwaukee City Attorney.

[11] This information is contained in a letter dated June 11, 1982, from the Office of the City Attorney to a Labor Relations Specialist for the City of Milwaukee. The City Attorney further stated that because the City was not required to provide such insurance, any "demand that the City provide uninsured motorist coverage . . . should be handled as part of the collective bargaining process."

[12] This information is contained in a letter dated October 24, 1983, from the Milwaukee Police Association, apparently sent to the Legislative Reference Bureau.

this burden and jeopardize the rights of their employees.

The legislature subsequently enacted sec. 66.189, Stats. *See* sec. 1, 1983 Wis. Act 537.

We agree with Millers National that a constitutionally sufficient justification can be found for the expenditure in this case. The City, however, does not argue that the statute is unconstitutional, but rather it argues that requiring the City to make payment to a private insurer on the basis of this statute is unconstitutional. We find this argument unconvincing.

As we have already stated in this opinion, the statute requires the City to provide insurance. If the City were to obtain such insurance by purchasing the policy, the premiums would be the required expenditure. Instead, however, the City has chosen to self-insure. Thus, while the City is not required to make premium payments, it is required to pay claims as they are filed. The City is in the insurance business, and a necessary part of being in the insurance business is paying claims where appropriate. While the City argues that, in this case, to make a payment would be to funnel tax dollars into the pockets of private insurers, the result would not be any different if the City were merely making premium payments to a private insurer. Premium proceeds would, by necessity, be used to pay claims, some of which may go to private insurers.

We also reject the City's characterization of this matter as one where, after having indemnified its insured for injuries caused by an uninsured motorist, a private insurer merely casts about for a prospect for reimbursement. Millers National, in response to its insured's demand, entered arbitration and paid the insured under policy terms. By virtue of the City's liability as another UM insurer, Millers National, as

Officer McGuire's subrogee under the policy, sought recovery from the City. This state of affairs is entirely separate from the question whether the legislature's enactment of sec. 66.189 was for a public purpose.

Furthermore, the legislature, when enacting the statute, most certainly was aware of the possibility that requiring the City to carry such insurance would inevitably reduce the burden placed on other insurers in some instances. One of the main concerns of the police union was that its members were told by the City to rely on their private insurers for UM coverage. Based on that concern, the legislature could reasonably have concluded that the cost of providing UM coverage to police officers for on-the-job accidents is a cost that is more appropriately borne by the City as a whole, than by private insurers who may, in turn, attempt to pass the burden on to police officers in the form of increased premiums, decreased coverage, or perhaps even specific exclusion from coverage. Providing insurance protection for City workers injured in the course of employment is a valid public purpose, justifying the expenditure of public funds. We therefore reject the City's constitutional defense.

In conclusion, the complaint of Millers National states a cause of action against the City for contractual subrogation and therefore the trial court erred in granting summary judgment in favor of the City. We further conclude that the City's constitutional challenge must fail because sec. 66.189, Stats., provides for an appropriate expenditure of public funds.

*By the Court.*—Judgment and order reversed and cause remanded.