MILLERS NATIONAL INSURANCE COMPANY, Plaintiff-Appellant,

v.

CITY OF MILWAUKEE, Defendant-Respondent-Petitioner.

Supreme Court

*No. 91–2536. Oral argument March 1, 1994.— Decided June 1, 1994.*

(Also reported in 516 N.W.2d 376.)

158

For the defendant-respondent-petitioner there were briefs by *Nick G. Kotsonis* and *Riordan, Crivello, Carlson, Mentkowski & Steeves, S.C.,* Milwaukee and oral argument by *Nick G. Kotsonis.*

For the plaintiff-appellant there was a brief by *Ernest J. Philipp, Maria K. Myers* and *Davis & Kuelthau, S.C.,* Milwaukee and oral argument by *Maria K. Myers.*

DAY, J.   This is a review of a decision of the court of appeals reversing a judgment of the circuit court for Milwaukee County, Honorable Patrick J. Madden, Judge, denying a claim by plaintiff, Millers National Insurance Company (Millers National), for subrogation against the City of Milwaukee (City). The circuit court dismissed the action on summary judgment for failure to state a claim upon which relief can be granted.[1] The court of appeals reversed, concluding that the City was obligated to provide uninsured motorist (UM) coverage under sec. 66.189, Stats.,[2] and that Millers National could make out a claim for subrogation from the City after payment to its insured, City of Milwaukee police officer Michael McGuire (Officer McGuire), by virtue of the appropriate provisions in its insurance contract. We affirm the court of appeals.

---

[1] *See,* sec. 802.06(2), Stats., which provides in relevant part:

**802.06   Defenses and objection; when and how presented; by pleading or motion; motion for judgment on the pleadings ... (2)**   How Presented. If on a motion asserting the defense described in f) to dismiss for failure of the pleading to state a claim upon which relief can be granted ... matters outside of the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in s. 802.08 . . ..

*See also, Prah v. Maretti,* 108 Wis. 2d 223, 228, 321 N.W.2d 182 (1982).

[2] Section 66.189, Stats, provides:

**66.189   Uninsured motorist coverage; 1st class cities.** A 1st class city shall provide uninsured motorist motor vehicle liability insurance coverage for motor vehicles owned by the city and operated by city employes in the course of employment. The coverage required by this section shall have at least the limits prescribed for uninsured motorist coverage under s. 632.(4)(a).

Section 632.32(4)(a) requires coverage limits of at least $25,000 per person and $50,000 per accident.

Officer McGuire was operating a city motorcycle in the course of his employment when he was struck and injured by an uninsured motorist on December 24, 1985. Following the accident, Officer McGuire and his attorney contacted the City about a claim under sec. 66.189, Stats., which provides that 1st class cities "shall" provide UM insurance coverage for motor vehicles owned by the city and operated by city employes in the course of employment. Section 632.32(4)(a) requires coverage limits of at least $25,000 per person and $50,000 per accident.

Officer McGuire was informed, however, that the City had no insurance coverage from which to pay him. Owing to the City's response, Officer McGuire then sought collection from his personal insurer, Millers National. Officer McGuire's policy with Millers National contained a UM coverage clause, providing UM coverage as *excess* insurance if Officer McGuire was injured while operating a vehicle he did not own.[3]

Millers National also contacted the City about a claim on behalf of Officer McGuire but was informed that the City had cancelled its UM coverage and had been unable to replace the coverage. A letter addressed to Millers National from the Deputy City Attorney stated: "Please be informed that the City of Milwaukee's uninsured motorist coverage was cancelled on September 14, 1985. The City has been unable to

---

[3] In the "Other Insurance" clause within the "Uninsured Motorists Coverage" provision of Officer McGuire's insurance policy from Millers National, it states: "If there is other applicable similar insurance we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. *However, any insurance we provide with respect to a vehicle you do not own shall be excess over any other collectible insurance.*" (Emphasis supplied.)

replace that coverage. Accordingly, none was in effect on December 24, 1985."

Millers National honored the claim, paying Officer McGuire $42,303.53 for his damages.[4] Subsequently, Millers National made a claim with the City for the amount of $25,000, the minimum amount that must be provided by the City under sec. 66.189, Stats. The City responded that subrogation was not available to Millers National under sec. 66.189. Millers National then brought the present action.

The circuit court dismissed Millers National's claim on summary judgment because it agreed with the City that subrogation was unavailable to Millers National under sec. 66.189, Stats. The circuit court concluded that the City owed its duty under sec. 66.189, only to Officer McGuire and not to Millers National, and therefore Millers National had no remedy against the City. The circuit court did acknowledge that subrogation may be possible as between two insurers, provided one insurer possesses superior equity. However, it denied subrogation to Millers National because it concluded that the City was not a tortfeasor here, and therefore, since both the City and Millers National were secondarily liable to Officer McGuire, there was no superior equity possessed by Millers National which would justify recovery against the City.

The court of appeals reversed, holding that sec. 66.189, Stats. requires the City to provide UM insurance protection on its vehicles. It concluded that the City's responsibility to provide UM insurance coverage is the same whether the City is self-insured or otherwise insured. It reasoned that if the City elects to be self-insured under sec. 66.189, the City will be treated

---

[4] This figure was arrived at under arbitration provided for in the policy.

as any other insurer for the purposes of sec. 66.189, and for subrogation purposes. Accordingly, applying the standard rules of subrogation, the court of appeals determined that Millers National was entitled to pursue a claim of contractual subrogation. The City's argument that payment to Millers National would violate the public purpose doctrine was rejected. We affirm the court of appeals.

This case first requires the interpretation of sec. 66.189, Stats., and the application of that statute to a set of undisputed facts. These issues are reviewed independently by this court without deference to the decisions of the circuit or appellate courts. *Ball v. District No. 4 Area Bd.,* 117 Wis. 2d 529, 537, 345 N.W.2d 389 (1984). Second, since this case was decided on summary judgment, we follow the standard of review as set forth in sec. 802.08, Stats. *Green Spring Farms v. Kersten,* 136 Wis. 2d 304, 315, 401 N.W.2d 816 (1987). This court can reverse the trial court if we find that the trial court incorrectly decided a legal issue. *Prince v. Bryant,* 87 Wis. 2d 662, 666, 275 N.W.2d 676 (1979). Third, to the extent we must interpret specific provisions of the insurance contract at issue, we do so as a question of law. *West Bend Mut. v. Playman,* 171 Wis. 2d 37, 40, 489 N.W.2d 915 (1992). Finally, the application of subrogation law, an equitable doctrine in origin, is ultimately decided by this court without deference to the circuit or appellate courts. *Employers Health Ins. v. General Cas.,* 161 Wis. 2d 937, 956, 469 N.W.2d 172 (1991).

Many important issues are not in dispute. The City does not dispute that sec. 66.189, Stats., requires the City to provide UM coverage for its vehicles. *American Family Ins. Co. v. Milwaukee,* 148 Wis. 2d 280, 285,

435 N.W.2d 280, 283 (Ct.App. 1988) *(Petition to review denied)*. The City acknowledges that it is responsible for at least $25,000 coverage under sec. 66.189, Stats.[5] The City recognizes that this requirement of the statute is constitutional on its face. The City admits further that it is "self-insured for purposes of sec. 66.189, Stats." Finally, the City concedes that, barring some defense to the claim, Officer McGuire himself would be entitled to collect directly under sec. 66.189.

The City contends, however, that Millers National is not entitled to subrogation under sec. 66.189, Stats. The City makes several arguments.

The City's first argument is that sec. 66.189, Stats., does not require the City to provide UM insurance coverage when the injury in question is covered by a private insurance policy. According to the City's interpretation, sec. 66.189, was only intended to provide a safety net of UM coverage, filling the gaps in coverage not provided for by private policies. The statute's objective is achieved, the City explains, by limiting the coverage provided by the municipality to those instances when no private coverage exists. If an injured person already has private UM coverage of $25,000 or greater, the City argues, coverage through the municipality is not required. Thus we understand the City to be arguing that Officer McGuire would have the choice to seek the UM coverage from either the City or a private insurer. However, once Officer McGuire had received payment for his injuries from his private insurer, the City would be under no obligation to reimburse the private insurer under subrogation.

[5] The City represented in oral argument that the City, as part of the City's self-insurance plan, had set the amount of coverage the City would supply at $25,000, to comply with sec. 66.189, Stats.

165

We disagree. As the court of appeals correctly concluded in *American Family,* 148 Wis. 2d at 285, sec. 66.189, Stats., clearly requires the City to provide UM coverage for its vehicles. This obligation is mandatory and categorical. The statute directs that the cities described in the statute "shall" provide UM insurance coverage. The word "shall" is presumed to be mandatory when it appears in a statute. *Karrow v. Milwaukee County Civil Serv. Comm.,* 82 Wis. 2d 565, 570, 263 N.W. 214 (1978). This obligation is imposed without regard to whether city employees have purchased private insurance or not.

The only issue here is the nature and scope of the duty imposed by sec. 66.189, Stats., upon the City by the statute. The City retains considerable discretion as to how it wishes to comply with this statutory obligation to provide UM insurance coverage. As the court of appeals observed in *American Family,* 148 Wis. 2d at 286, the City may provide this insurance in any number of ways. The City may purchase third-party insurance, it may form a municipal insurance mutual under sec. 611.11(4), Stats., it may rely upon self-insurance, or any other lawful means to provide the UM insurance coverage. However, regardless of which means the City chooses to provide insurance, the obligation is the same. The City is responsible for providing UM insurance coverage for its vehicles to a limit of at least $25,000. In this case, the City has admitted that it is self-insured for purposes of sec. 66.189, and has acknowledged that it is responsible for coverage limits of $25,000.

The fact that the City is self-insured does not diminish its obligation or diminish its answerability in

subrogation. In this context, self-insurance is considered merely another form of insurance. *See, Hillegass v. Landwehr,* 176 Wis. 2d 76, 81–82, 499 N.W.2d 652 (1993). Whether the City elects to contract with a third-party insurer to provide the coverage in exchange for premium payments, or whether the City elects to cover the risk itself through self-insurance and save the premium payments, the nature of insurance is the same.[6] By electing to self-insure, the City has effectively placed itself in the insurance business for the purposes of sec. 66.189, Stats. As the court of appeals observes, "a necessary part of being in the insurance business is paying claims where appropriate." *Millers National Ins. Co. v. Milwaukee,* 177 Wis. 2d 573, 588, 503 N.W.2d 284 (Ct. App. 1993). We conclude, therefore, that if the City is self-insured, it is responsible for the same liabilities that would attach to third-party insurers covering that same risk. As in *Hillegass,* 176 Wis. 2d at 83, it would be fundamentally unfair and contrary to legislative intent to permit the City to escape both the expense of premium payments and the possibility of being held liable as a primary self-insurer.

The City next argues that Millers National does not qualify for subrogation under the statute. The City claims that there is a rule of statutory subrogation that "a private insurance company cannot maintain a cause of action for equitable or contractual subrogation against a statutorily liable self-insured municipality that was not a tortfeasor." Since the City was not a tortfeasor or wrongdoer in Officer McGuire's accident, the City maintains, it cannot be required to respond in subrogation.

[6] It is irrelevant that private insurance policies may have been either unavailable to, or considered undesirable by, the City. *See, American Family,* 148 Wis. 2d at 286–287.

The City claims to derive this rule from the "mob damage" statute, sec. 66.091, Stats.,[7] and the cases construing that statute. In particular, the City cites *Interstate Fire & Casualty Co. v. Milwaukee,* 45 Wis. 2d 331, 173 N.W.2d 187 (1970), and *American Ins. Co. v. Milwaukee,* 51 Wis. 2d 346, 187 N.W.2d 142 (1971), two cases in which this court denied the claims for subrogation by insurers against the city of Milwaukee under sec. 66.091. The court concluded that for the purposes of sec. 66.091, the city of Milwaukee was not a tortfeasor and therefore subrogation would not be allowed under sec. 66.091. The City urges that the holdings construing sec. 66.091, should also be applied to sec. 66.189, Stats. Millers National, however, argues that the holdings of *Interstate* and *American Insurance* are limited to that specific statute, sec. 66.091, and not transferrable to the present statute.

We agree with Millers National. Contrary to what the City alleges, there is no general rule of law or equity that subrogation may be had only against a tortfeasor. It is true that "[t]he purpose of subrogation is to place the loss ultimately on the wrongdoers." *Cunningham v. Metropolitan Life Ins. Co.,* 121 Wis. 2d 437, 444, 360 N.W.2d 33 (1985). However, that does not mean that subrogation may only be had against a wrongdoer or tortfeasor. The rule is well established that the right to subrogation arises "when a person other than a mere volunteer pays a debt which in equity and good conscience should be satisfied by

---

[7] Section 66.091, Stats., provides in relevant part:

**66.091 Mob damage. (1)** A county shall be liable for injury to person or property by a mob or riot therein except when cities are liable. Within a city, the city shall be liable for such injury except
. . ..

another." *D'Angelo v. Cornell Paperboard Products Co.*, 19 Wis. 2d 390, 399–400, 120 N.W.2d 70 (1963); *Jindra v. Diederich Flooring,* 181 Wis. 2d 579, 605, 511 N.W.2d 855 (1994). Likewise, in *Employers Health Ins.,* 161 Wis. 2d at 956, this court stated that subrogation may be permitted as between two parties when "the rights of those seeking subrogation have greater equity than the rights of those who oppose it."

Nor is there any rule that so-called "statutory subrogation" may be had only against a tortfeasor or wrongdoer. Statutory subrogation, as the name suggests, is nothing more or less than subrogation arising by operation of statute. As with any right, remedy, or relief provided by statute, subrogation created in this manner would be subject to the terms of the specific statutory provision from which it derives. Accordingly, the subrogation available under any given statute depends upon the particular construction given to that specific statute. If the statute in question provides for subrogation only against a tortfeasor, or only against a specific class of persons, then no subrogation may be had against a party who is not a tortfeasor or is not within the specified class. However, unless some restriction is specified in the statute, there is no rule that subrogation rights created by statute may be had only against the tortfeasor or wrongdoer.

Those cases which have found only limited subrogation rights, such as *Interstate* and *American Insurance,* are based upon the construction of a specific statute and are therefore limited to applications of that specific statute. Neither *Interstate* nor *American Insurance* stands for the proposition that subrogation is limited to collection from a tortfeasor and only a tortfeasor. To the contrary, this court specifically noted

in *Interstate* that subrogation "has often been applied on behalf of one who has paid for damages caused by a tortfeasor." (citing *Patitucci v. Gerhardt*, 206 Wis. 358, 240 N.W. 385 (1932)).

Likewise, the opinions in *Hamed v. Milwaukee County*, 108 Wis. 2d 257, 264–265, 321 N.W.2d 199 (1982), *Employers Health Ins.*, 161 Wis. 2d 937, and *Dailey v. Secura Ins. Co.*, 164 Wis. 2d 624, 476 N.W.2d 299 (Ct. App. 1991) are limited to those specific statutes and specific provisions, respectively, addressed in those cases. For instance, in *Hamed v. Milwaukee County*, 108 Wis. 2d at 264–265, this court found that then sec. 949.15, Stats., limited DILHR's subrogation rights under the statute to a specific class of persons, i.e., the "person responsible for such injury or death." *Hamed* did not say that all subrogation arising by statute is limited to that same specific class of persons.[8]

The question is then whether sec. 66.189, Stats., is so similar to sec. 66.091, Stats., that the cases interpreting the mob damage statute should be applied to

[8] The court of appeals in *Dailey*, 164 Wis. 2d at 628, does state at one point that "[s]tatutory subrogation is a right that exists only against a wrongdoer." (citing to *Employers Health Ins.*, 161 Wis. 2d at 950–951, on this point). Such statements, however, must not be taken out of the specific statutory context to which they apply. Both *Dailey* and *Employers Health Ins.*, the case which *Dailey* cites on this point, are limited to the specific provisions and instances at issue in those cases. As the court of appeals correctly observed in *Millers National*, 177 Wis. 2d at 582, *Employers Health Ins.* was limited to the interpretation of a specific policy provision. *Employers Health Ins.* was not intended to establish or endorse any rule that subrogation may only be had against the actual tortfeasor. Likewise, the statement quoted from *Dailey* must be limited to the specific statutory provision which was the subject of the court's opinion.

the present statute. We conclude they are not sufficiently similar. The mob damage statute and sec. 66.189 are not analogous, and there is no basis for transferring the holdings of those cases construing the mob damage statute to sec. 66.189. Unlike sec. 66.189, the mob damage statute is a direct liability statute. Section 66.091, makes the county (or city) directly liable to the injured parties.

By contrast, sec. 66.189, Stats., does not assess any liability to the municipality. Section 66.189, merely directs "1st class cities" to provide UM insurance coverage for the vehicles owned by those cities. The City's obligation is not predicated on any liability or wrongdoing. The City is merely required to provide insurance coverage. Hence the requirement that the city or county be found the equivalent of a tortfeasor or wrongdoer in *Interstate* and *American Insurance* before subrogation would be allowed is confined to that statute, sec. 66.091, Stats.

The City next argues that even if allowed under the statute, subrogation in favor of Millers National would go against equity and public policy. According to the City, Millers National does not deserve subrogation because Millers National did nothing more than pay what it was obligated to pay under contract. Since Millers National collected premiums from Officer McGuire for this UM protection, the City explains, it should not now be guaranteed reimbursement through subrogation against the City. This, the City complains, would constitute a windfall to Millers National. This windfall would result because Millers National would be paid twice, once from Officer McGuire the insured, and again from Officer McGuire the taxpayer.

The City again analogizes to the cases construing the mob damage statute. In *Interstate,* 45 Wis. 2d at 339, one reason the court listed for denying subrogation under the mob damage statute was because the "insurance companies, after receiving their premium, would continually be assured of recovery." Accordingly, the court concluded that under the circumstances presented, it would be inequitable to force taxpayers to bear the risk for which the insurance companies had already received premiums to bear. *See also, American Insurance,* 51 Wis. 2d at 353, n. 12.

As noted above, however, those decisions are limited to that particular statute and those specific circumstances. Again, the court in *Interstate,* 45 Wis. 2d at 339, made clear that there is no per se rule that subrogation is unavailable in all cases in which insurance companies had received premiums to ensure a risk for which another is answerable by virtue of a statutorily imposed liability.

The present case is clearly distinguishable from the cases under the mob damage statute. First, as noted above, in *Interstate* and *American Insurance* the court was faced with an "absolute liability statute" which imposed direct liability onto the municipality and would therefore virtually guarantee recovery to the private insurance companies were subrogation allowed under those circumstances. *See, Interstate,* 45 Wis. 2d at 338. The same rationale does not apply when the City's only obligation under the statute is to provide insurance.

Second, unlike the situations disfavored in *Interstate* and *American Insurance,* Millers National is not insuring the same risk which the City is required to cover. The circuit court assumed that both Millers National and the City were secondarily liable for

Officer McGuire's coverage. This was in error. As we concluded above, the City's obligation to provide UM insurance is mandatory and categorical. Nothing in the statute suggests that the City is only secondarily liable or may elect to be so. The City is, therefore, *primarily* responsible for providing such coverage, and as a self-insurer under sec. 66.189, Stats., the City is the primary insurer.

By contrast, it is clear on the face of Millers National's policy that it provides for *excess* insurance coverage only. In the "Other Insurance" clause within the "Uninsured Motorists Coverage" provision of Officer McGuire's insurance policy from Millers National, it states: "If there is other applicable similar insurance we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. *However, any insurance we provide with respect to a vehicle you do not own shall be excess over any other collectible insurance.*" (Emphasis supplied.) Since the City and not Officer McGuire owned the motorcycle which he was driving, we presume that the "Other Insurance" clause would govern and that Millers National would not be responsible for that amount for which other insurers are primarily liable. Therefore it is not correct to suggest that the risk covered by Millers National and the City was the same.

Furthermore, we note that even if the risk covered by Millers National and the City were identical, there may be many reasons to purchase insurance to protect against certain risks (and, correspondingly, to allow subrogation claims) even though the statute provides that the damage must be covered by the municipality. Without necessarily endorsing such conclusions, we note that in an analysis of sec. 66.091, Stats., a Wiscon-

sin Legislative Council Research Bulletin observed that, "[i]f mob or riot damage insurance is unavailable, private property owners who suffer such damage will be forced to litigate directly against the municipality to recover. In many cases, the cost of litigation may be prohibitive for the individual property owner. Without the availability of insurance, and the risk spreading function it serves, it is possible that many small business owners will be forced to leave inner core, high risk urban areas for low risk districts." Wisconsin Legislative Council Research Bulletin 76–6, *"Public Liability for Civil Disturbance Damage,"* July 20, 1976, p. 14.

The equities in this case favor allowing subrogation to insurers in the position of Millers National. There is no reason in equity for disfavoring the party, otherwise eligible under sec. 66.189, Stats., who looks first to his or her private insurance carrier for speedy reimbursement, or his or her insurance carrier who agrees to pay in full and await later subrogation. Furthermore, as this court expressed in *Jindra,* 181 Wis. 2d at 605, "we do not wish to discourage early and contingent payments" by insurers. We therefore find no reason to deny subrogation to Millers National in the present case.

Finally, the City claims that allowing subrogation against the City in favor of Millers National would violate the public purpose doctrine. The public purpose doctrine, although not recited in any specific clause in the state constitution, is a well-established constitutional doctrine. *Hopper v. Madison,* 79 Wis. 2d 120, 128, 256 N.W.2d 139, 142 (1977). As this court held in *State ex rel. Warren v. Nusbaum,* 59 Wis. 2d 391, 414, 208 N.W.2d 780 (1973), "[p]ublic funds may be

174

expended for only public purposes. An expenditure of public funds for other than a public purpose would be abhorrent to the constitution of Wisconsin."[9]

Ordinarily a municipality lacks standing to challenge the constitutionality of a statute, as the City acknowledges. *City of Madison v. Ayers,* 85 Wis. 2d 540, 271 N.W.2d 101 (1978). However, an exception to this general rule has been recognized which permits a challenge if the issue is of great public concern. *Id.* at 545. In *Fulton Foundation v. Department of Taxation,* 13 Wis. 2d 1, 13, 108 N.W.2d 312 (1961), this court concluded that the diversion of public funds for a private purpose is a matter of great public concern. The City's claim in this case is that payment to Millers National by subrogation would constitute precisely such a diversion.

In reviewing a "legislative expenditure of public funds, there is a strong presumption that a legislature's acts are constitutional, and it is the duty of this court, if possible, to construe a legislative enactment as to find it in harmony with constitutional principles." *Hopper,* 79 Wis. 2d at 128. We are not concerned with the "wisdom, merits or practicability of the legislature's enactment." *Id.,* at 129. Rather, we are to

---

[9] The City cites to *Wisconsin Keeley Institute Co. v. Milwaukee County,* 95 Wis. 153, 70 N.W. 68 (1897). That case, however, is not applicable even on its terms. The court in that case struck down a statute which, in the perspective of that time, it construed as serving only "private purposes" and benefiting only private parties. *Id.,* at 157–158. Section 66.189, Stats., is not such a statute. The court of appeals in *Millers National,* 177 Wis. 2d at 588, correctly rejected the City's argument that sec. 66.189, Stats., merely funnels tax dollars into the pockets of private insurers.

175

determine whether a "public purpose can be conceived which might reasonably be deemed to justify or serve as a basis for the expenditure." *Id.*

We note that the City is not claiming that the statute itself is unconstitutional. The City concedes that the requirement that it provide insurance to protect city workers injured in the course of employment is a valid public purpose. The City agrees that payments from the City to city workers injured in the course of their employment would be considered a direct public benefit. The City also acknowledges that the payment of premiums by the City to a private insurance company would be allowed. The City's only complaint is that allowing subrogation against the City after Officer McGuire had been made whole by private insurance would constitute a diversion of public funds to a private purpose without any corresponding public benefit.

We disagree. As explained above, once the City engages in the business of providing insurance coverage under sec. 66.189, Stats., by electing to self-insure, it will be treated as an insurance company for the purposes of that statute. It follows that this includes the obligation to pay claims when appropriate and, if applicable, being subject to the normal rules of subrogation.

We conclude, therefore, that Millers National may make out a claim for subrogation against the City. Since this issue is addressed solely for summary judgment purposes, we do not reach the question of whether Millers National's claim for subrogation will ultimately be successful. Subrogation may be based upon either contract or equitable principles. *Jindra,* 181 Wis. 2d at 601. Since we have concluded that the City will be considered as any other insurer for the purposes of sec. 66.189, Stats., it follows that the City

will be considered as any other insurer for the purposes of subrogation under sec. 66.189, and for the purposes of appropriate "other insurance" clauses in applicable insurance contracts.

*By the Court.*—The decision of the court of appeals is affirmed and cause remanded for further proceedings not inconsistent with this opinion.