Jerry NORMAN, Plaintiff,

v.

CITY OF MILWAUKEE, Defendant-Appellant,†

GENERAL CASUALTY COMPANY OF ILLINOIS, Defendant-Respondent.

Court of Appeals

*No. 95–0009. Submitted on briefs October 3, 1995.—Decided November 7, 1995.*

(Also reported in 542 N.W.2d 473.)

†Petition to review denied.

For the defendant-appellant the cause was submitted on the briefs of *Nick G. Kotsonis* of *Crivello, Carlson, Mentkowski & Steeves, S.C.* of Milwaukee.

For the defendant-respondent the cause was submitted on the briefs of *Jacqueline E. Frakes* of *Eiche & Frakes, S.C.* of Milwaukee.

Before Wedemeyer, P.J., Fine and Schudson, JJ.

WEDEMEYER, P.J. The City of Milwaukee appeals from a judgment in favor of General Casualty Company of Illinois on an insurance coverage dispute. The City claims that the trial court erred in determining that the City's uninsured motorist policy afforded primary coverage for damages suffered by an on-duty police officer when the squad car he was driving was struck by an uninsured motorist. General Casualty provided personal automobile insurance to the police officer. Because § 66.189, STATS., as interpreted by our supreme court in *Millers Nat'l Ins. Co. v. Milwaukee*,[1] compels the City to provide primary uninsured motorist coverage under the facts of this case, we affirm.

## I. BACKGROUND

On September 3, 1991, Jerry Norman, a Milwaukee police officer, was injured when the squad car he was driving was rear-ended by an unidentified uninsured motorist. Officer Norman was acting in the course of his employment with the City at the time of the accident. Norman sued both the City and General Casualty seeking uninsured motorist coverage. In May 1993, the City filed a declaratory judgment motion seeking a ruling that General Casualty provided primary UM coverage. The trial court examined the policies in question, ruled that the "other insurance" provisions of the policies were in conflict, and that because of the conflict, both the City and General Casu-

---

[1] *See* 184 Wis. 2d 155, 516 N.W.2d 376 (1994).

alty should provide coverage, shared on a *pro rata* basis.[2]

After this ruling, General Casualty settled the claim for $10,500. General Casualty then requested the City to pay its *pro rata* share. The City objected, questioning the reasonableness and necessity of the amount of the settlement. The City demanded to try these issues. In July 1994, General Casualty sought reconsideration of the coverage decision on the basis of the *Millers* case. The trial court heard the motion and vacated the earlier coverage determination, ruling that § 66.189, STATS., as interpreted by *Millers*, requires the City to provide primary uninsured motorist coverage.[3] The parties entered into a stipulation on the liability and damage issues so that judgment could be entered. Judgment was entered in favor of General Casualty and against the City in the amount of $10,934.75. The City now appeals.

## II. DISCUSSION

The City claims that § 66.189, STATS., does not require the City's uninsured motorist coverage to act as the primary policy. General Casualty argues that the statute and the *Millers* case clearly require the City's policy to operate as the primary policy. The trial court agreed with General Casualty. We affirm.

The issue presented in this case involves the interpretation of a statute, which is a question of law that this court reviews *de novo*. *Brandt v. LIRC*, 160 Wis. 2d 353, 361, 466 N.W.2d 673, 676 (Ct. App. 1991), *aff'd*,

---

[2] The Honorable Robert W. Landry presided over the hearing.

[3] The Honorable Louise M. Tesmer presided over the motion for reconsideration.

166 Wis. 2d 623, 480 N.W.2d 494 (1992). Section 66.189, STATS., provides in pertinent part:

> A 1st class city shall provide uninsured motorist motor vehicle liability insurance coverage for motor vehicles owned by the city and operated by city employes in the course of employment. The coverage required by this section shall have at least the limits prescribed for uninsured motorist coverage under s. 632.32(4)(a).

Both this court and our supreme court recently interpreted the meaning of this statute in the *Millers* cases. *See Millers*, 177 Wis. 2d 573, 586-89, 503 N.W.2d 284, 289-90 (Ct. App. 1993), *aff'd*, 184 Wis. 2d at 171-73, 516 N.W.2d at 381-82. In examining the legislative purposes behind § 66.189, STATS., this court concluded:

> [T]he legislature, when enacting the statute, most certainly was aware of the possibility that requiring the City to carry such insurance would inevitably reduce the burden placed on other insurers in some instances. One of the main concerns of the police union was that its members were told by the City to rely on their private insurers for UM coverage. Based on that concern, the legislature could reasonably have concluded that the cost of providing UM coverage to police officers for on-the-job accidents is a cost that is more appropriately borne by the City as a whole, than by private insurers who may, in turn, attempt to pass the burden on to police officers in the form of increased premiums, decreased coverage, or perhaps even specific exclusion from coverage.

*Millers*, 177 Wis. 2d at 589, 503 N.W.2d at 290. In *Millers*, we decided that the legislative intent of § 66.189 was to protect City employees and provide

them with uninsured motorist coverage without forcing them to secure either supplemental or additional coverage. *See Millers*, 177 Wis. 2d at 589, 503 N.W.2d at 290. Our supreme court further refined this court's decision and specifically held:

> [T]he City's obligation to provide UM insurance is mandatory and categorical. Nothing in the statute suggests that the City is only secondarily liable or may elect to be so. The City is, therefore, *primarily* responsible for providing such coverage, and as a self-insurer under sec. 66.189, STATS., the City is the primary insurer.

(Emphasis in original.) *Millers*, 184 Wis. 2d at 173, 516 N.W.2d at 381-82. Accordingly, we reject the City's claim that § 66.189 does not require it to provide primary UM coverage to city employees who are injured by an uninsured motorist while operating a city-owned vehicle.

The City attempts to distinguish the present case from the *Millers* case. It argues that the *Millers* holding does not apply to the instant case because the accident in this case (unlike the accident in *Millers*) occurred *after* the City developed its uninsured motorist self-insurance plan, which was approved and adopted by the common council, pursuant to § 62.11(5), STATS. The City claims that the *Millers* court did not address the plan's "other insurance" clause and, therefore, cannot control the instant case. We are not convinced.

█

The statute, as interpreted by our supreme court in *Millers*, is clear: when City employees operating City vehicles make a UM claim, the City provides the primary insurance. The plan adopted by the City, and approved by the common council, conflicts with this

holding because the plan's "other insurance clause" elects *to not provide* primary UM coverage.[4] This conflict renders the "other insurance clause" of the City's plan void, *see Anchor Sav. & Loan Ass'n v. Equal Opportunities Comm'n*, 120 Wis. 2d 391, 397, 355 N.W.2d 234, 238 (1984) (a common council of a city may not pass ordinances or resolutions that conflict with the laws of this state), and the *Millers* holding controls. Accordingly, we conclude that § 66.189, STATS., as interpreted by our supreme court in *Millers*, requires the City to provide primary UM coverage to Officer Norman.

 *By the Court.*—Judgment affirmed.

 [4] The plan's "other insurance" clause provides in pertinent part:

 A. There is no coverage for City employees under this Self-Insurance Plan if the City employee is covered, at the time of a motor vehicle accident by any other collectible insurance or other self-insurance with limits of liability sufficient to indemnify for his or her damages.

 B. If coverage is provided under this Self-Insurance Plan, it shall be excess over the limits of liability provided by any other collectible insurance or self-insurance even though the other insurance or self-insurance states itself to be primary, contributing, excess or contingent.

 C. If this Self-Insurance Plan and another Self-Insurance Plan or uninsured motorist policy are determined to provide coverage on a pro rata basis, the City of Milwaukee will only be responsible for damages in proportion to its share of the total of the limits of all applicable self-insurance plans and insurance policies. Under no circumstances, however, will the City of Milwaukee be responsible for damages greater than those limits of liability established in this Self-Insurance Plan.